## Lacey Williams v. State.

No. 26,693. January 6, 1954.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) March 3, 1954.

*Martin & Shown,* by *W. E. Martin, John R. Francis,* and *Tom Sanders,* Houston, for appellant.

*William H. Scott,* District Attorney, *King C. Haynie,* Assistant District Attorney, and *Wesley Dice,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

In 1951, by Chap. 434, Acts of the Regular Session of the

52nd Legislature, and appearing in Sec. 2 of Art. 642c, Vernon's P. C., which will be hereafter referred to as the statute, it was made unlawful for any person to "possess, except for evidence purposes, any . . . . policy slip" and "policy book . . . designed or adaptable for use in connection with any policy game."

Under an information charging, in separate counts, a violation of the statute on March 3, 1953, March 16, 1953, and March 22, 1953, appellant was convicted upon each count and her punishment assessed at a fine of $100 and six months' confinement in jail.

Armed with and by virtue of search warrants, peace officers searched the home of appellant upon the three separate dates mentioned. On these occasions, they found what they called policy books and policy slips. The policy books were plain notebooks or blank books with no printing thereon and the policy slips were of plain paper.

The witnesses for the state were permitted, without objection on the part of the appellant, to testify that the books and slips so recovered were designed and adaptable for use in connection with a policy game. This conclusion on the part of the witnesses was based upon the numbers and figures found thereon.

On two of the occasions mentioned, different parties were present on the premises with appellant. These parties testified to facts tending to show that appellant was a policy writer—in Cagle v. State, 147 Tex. Cr. R. 354, 180 S. W. 2d 928, and Braley v. State, 156 Tex. Cr. R. 15, 238 S. W. 2d 539, will be found a statement of conditions under which a person may be identified as being a policy writer—and, as such, they had placed policy bets with the appellant. One of the witnesses, a seventy-six-year-old man, whose livelihood consisted of a pension, identified one of the policy books in evidence as being similar to the one in which appellant had recorded his bet.

It is upon the facts stated that the connections were obtained.

The appellant did not testify.

It is insisted that the facts are insufficient to support the conviction, in two particulars: (1) the policy books and policy slips were neither designed nor adaptable for use in connection

with the game of policy, and, (2), there is no evidence showing that any person had played a game of policy completely, which appellant insists is necessary in order to constitute the game of policy.

A construction of that part of the statute here involved is called for.

Upon its face, the statute makes unlawful the possession of a policy book and policy slip designed or adaptable for use in connection with a policy game. The intent of the possessor is not expressly stated as a part of the statute.

The terms, "policy book" and "policy slip," are not defined in the statute. As there used, they mean and have reference to a book and slip used in playing the game of policy. Not only must the policy book and policy slip be such as are used in playing the game of policy but they must also be "designed or adaptable" for use in that connection. The terms, "designed" and "adaptable," are not defined in the statute. As there used, the term, "designed," means, among other things, "intended" (26 C. J. S. 1238), while "adaptable" means "easily made suitable" (Raynor v. U. S., 89 Fed. 2d 469).

It is apparent, therefore, that by the use of the term, "designed," an intent on the part of the possessor of the policy book and policy slip is written into the offense.

It is, therefore, immaterial that the book here involved was, upon its face, nothing more or less than a common notebook and the slip merely a blank piece of paper. If the notebook and slip of paper were possessed by appellant with the intent to use them in playing the game of policy, the unlawful act condemned by the statute has been shown.

The facts abundantly warrant the jury's conclusion not only that the policy book and policy slip found in appellant's possession were designed—that is, intended—to be used in a game of policy but also that they were actually being used.

Appellant's contention that in order to establish guilt it would be necessary to show a complete game of policy is untenable under the conclusion just expressed—that is, that the offense denounced is complete with the possession of a policy book and policy slip with intent to use them in a game of policy.

Appellant complains that the search of her residence was unwarranted, not being authorized by a valid search warrant.

Neither the search warrant nor the affidavit under which the searches were made is before us. The question as to the legality of the searches is therefore not presented.

The proof that one of the parties who had placed a bet with appellant was seventy-six years of age and a pensioner was received in evidence without objection. Inasmuch as this evidence was before the jury, we are unable to conclude that it was prejudicial error for the state to prove, over appellant's objection, that "people who are poor and superstitious" play the game of policy. It is the rule that where testimony is admitted without objection, the appellant may not object to proof of the same facts from another source or witness.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.