**The STATE of Texas, Appellant**

v.

**Pastor Israel DIAZ–BONILLA, Appellee**

**NO. 14–15–00503–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed February 9, 2016

Discretionary Review Refused July 27, 2016

Carly Dessauer, Houston, TX, for Appellant.

Randy Schaffer, Houston, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Christopher and McCally.

## OPINION

Tracy Christopher, Justice

Pastor Israel Diaz–Bonilla ("Diaz") pleaded guilty to engaging in organized criminal activity. He then moved for a new trial, arguing that his counsel had given him erroneous advice, which rendered his plea involuntary. Following an evidentiary hearing, the trial court deter-

mined that counsel's assistance had been ineffective, and it signed an order granting the motion for new trial. The State now appeals from that order. Finding no abuse of discretion, we affirm the trial court's decision.

## BACKGROUND

A woman was found dead in her car with gunshot wounds to her head, neck, and shoulder. The woman's boyfriend contacted authorities after the body was discovered, suspecting that the MS–13 street gang was responsible for the killing. Authorities then arrested Diaz, a member of that gang, and brought him in for questioning.

Diaz cooperated with his interrogators. He told them that on the night of the murder, he was at his home with six other members from his gang. The leader of the gang announced that the complainant had been "green-lighted," meaning that an order had issued from within the gang's larger organization for the complainant to be killed. The gang leader assigned one of the gang members to carry out the murder. The gang leader told Diaz to come along and watch. The gang then departed in two vehicles, with Diaz riding in the backseat of the gang leader's car.

The gang leader called the complainant and lured her to a location under the pretense of selling her a gun. Once at that location, two gang members from the other car approached the complainant, who had been waiting there alone. One of the gang members asked for the complainant's cell phone. When she delivered it, the other gang member, who was assigned to be the gunman, pulled out his weapon and fired at the complainant multiple times, killing her. The gang left quickly, and Diaz was driven back to his home.

Diaz told his interrogators that he did not know the complainant personally, and he had never spoken with her. He also expressed regret for the killing. "I felt very bad and did not feel good about it," he stated. "I already knew this was going to happen but I could not do anything because I had to do what the leader of the gang told me. I did not want to do anything to put myself and my family at risk."

Diaz was charged by indictment with engaging in organized criminal activity, based on a theory that he conspired to commit a murder. The indictment alleged that Diaz performed several overt acts in furtherance of his conspiracy. Those overt acts were alleged as follows:

> Defendant was present with other members as orders to kill the complainant were given, and was present when the complainant was called to lure complainant to a specific location, and traveled to the location where the complainant was shot, and witnessed other members shoot the complainant, and drove away with members who shot the complainant.

On the advice of counsel, Diaz pleaded guilty to the offense as charged in the indictment. There was no agreed recommendation as to punishment. The trial court accepted the plea and sentenced him to thirty-five years' imprisonment.

## I. The Motion for New Trial

Under new representation, Diaz filed a motion for new trial, arguing that his plea was involuntary because counsel had been ineffective during the plea proceedings. The motion had three grounds. First, Diaz alleged that the indictment failed to state an offense because it did not sufficiently allege an overt act in furtherance of a conspiracy. Second, Diaz alleged that if he had pleaded not guilty and been convicted at trial, the evidence would have been legally insufficient to sustain a conviction as a party because Diaz was only a

witness. Third, Diaz alleged that counsel failed to inform him of his legal defenses, making his plea involuntary. The State did not file a written response to the motion.

## II. The Hearing

The trial court held an evidentiary hearing, where Diaz's trial counsel testified about his personal assessment of the facts. Counsel believed that Diaz traveled to the murder scene as a backseat passenger in the gang leader's car because he was instructed to do so by the gang leader. Counsel also believed that Diaz was told by the gang leader that he "wasn't going to do anything." Counsel's impression was that Diaz was "just a witness."

Counsel testified that he did not research the sufficiency of the indictment, nor did he research whether the allegations in the indictment amounted to overt acts within the meaning of the law. He did not tell Diaz that he could have filed a motion to quash the indictment, or that a denial of the motion could have been appealed.

Despite a personal belief that the allegations were not overt acts, counsel opined that the indictment stated a complete offense. Counsel explained that there might be questions of fact on some of the alleged overt acts, and a conviction could be returned "if the jury felt that those were overt acts." Counsel accordingly advised Diaz that "if he did what the indictment alleged, he was guilty as charged."

Counsel also testified that he told Diaz that if he pleaded not guilty, then there was an arguable basis that the evidence at trial would be insufficient to sustain a conviction. Counsel claimed that he discussed an opportunity for an appeal in the event of a conviction. However, counsel did not advise Diaz that he could challenge the sufficiency of the evidence on appeal, and that if an appellate court agreed that the evidence was insufficient, then his conviction would be reversed and he would be acquitted.

Diaz testified that counsel never advised him that there was a legal basis to challenge the indictment, or that the issue could have been appealed. Diaz also testified that counsel never told him that he had any legal or factual defenses to the case. Instead, Diaz claimed that counsel told him that he needed to plead guilty and throw himself at the mercy of the court because that was his "only real option." If counsel had advised him of his other options, Diaz testified that he would have challenged the indictment or pleaded not guilty.

After the evidentiary portion, both sides argued to the trial court. Diaz argued that the indictment did not allege any overt acts and that counsel should have filed a motion to quash. Diaz also argued that if he had pleaded not guilty, then the evidence at trial would have been legally insufficient because the State could not have proved an agreement to commit the murder or an overt act in furtherance of a conspiracy to commit murder. Diaz argued that he was merely a witness,[1] and he had no duty to prevent the murder. He also argued that counsel was ineffective because counsel failed to tell him about his options.

The trial court granted the motion for new trial, determining that counsel was ineffective. Although it did not sign written findings of fact, the trial court stated

---

1. Diaz gave the trial court two cases on this point, *Gross v. State*, 380 S.W.3d 181 (Tex. Crim.App.2012) and *Winfrey v. State*, 393 S.W.3d 763 (Tex.Crim.App.2013), cases in which the Court of Criminal Appeals held the evidence was legally insufficient to support a conviction for murder or capital murder.

that the basis for its ruling was that counsel "should have properly advised his client about what the indictment alleged and what his options were."

## STANDARD OF REVIEW

We review an order granting or denying a motion for new trial for an abuse of discretion. *See State v. Herndon,* 215 S.W.3d 901, 906 (Tex.Crim.App.2007). Generally, this standard means that we must decide whether the trial court's ruling was arbitrary or unreasonable. *See Webb v. State,* 232 S.W.3d 109, 112 (Tex. Crim.App.2007). As a reviewing court, we must afford "almost total deference" to a trial court's determination of historical facts and its application of the law to fact questions whose resolution turns on an evaluation of credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We therefore view the evidence in the light most favorable to the trial court's ruling, and we will uphold that ruling if it was within the zone of reasonable disagreement. *See Webb,* 232 S.W.3d at 112.

"Abuse of discretion" can mean different things in different contexts though. *See State v. Munoz,* 991 S.W.2d 818, 821 (Tex.Crim.App.1999). We do not give the same level of deference to the trial court's rulings on purely legal questions or mixed questions of law and fact not turning on an evaluation of credibility and demeanor. *See Guzman,* 955 S.W.2d at 89. Because the trial court is in no better position than this court to determine such matters, we review them de novo. *Id.*

When a trial court grants a motion for new trial, we presume that its decision is correct, and the appellant—in this case, the State—has the burden of establishing the contrary. *See State v. Belcher,* 183 S.W.3d 443, 447 (Tex.App.– Houston [14th Dist.] 2005, no pet.) (citing

*Lee v. State,* 167 Tex.Crim. 608, 611, 322 S.W.2d 260, 262 (1958)). If no findings of fact or conclusions of law were made, the trial court's judgment must be upheld if any appropriate ground exists to support it. *Id.*

Because Diaz prevailed on his motion below, and because the trial court signed no findings of fact, we presume that the trial court resolved any disputed fact issues in Diaz's favor, and we must defer to these implied findings of fact if they are supported by the record. *Id.* at 445 n. 2.

## ANALYSIS

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim. App.1986). Accordingly, when a defendant challenges the validity of a guilty plea entered upon the advice of counsel, contending that his counsel was ineffective, the defendant must comply with the *Strickland* standard to set his plea aside. *See Ex parte Harrington,* 310 S.W.3d 452, 458 (Tex.Crim.App.2010).

Under *Strickland,* the defendant must prove by a preponderance of the evidence that his counsel's performance was deficient and that the deficient performance resulted in prejudice. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. To demonstrate deficient performance, the defendant must establish that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. When the claim of ineffectiveness is predicated on an involuntary plea of guilty,

prejudice is shown if the defendant establishes that, but for his counsel's advice, he would have pleaded not guilty and insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

The State does not challenge the trial court's implied finding of prejudice, which is supported by the record. The State argues instead that the trial court abused its discretion when it found that counsel's performance fell below an objective standard of reasonableness. The State begins with the first ground asserted in Diaz's motion for new trial.

### I. The indictment alleges an overt act.

The State argues that "the crux of the matter" is "whether the indictment charging [Diaz] with the offense of engaging in organized criminal activity included an allegation of an overt act." According to the State, if the indictment were sufficient on its face to allege an overt act, then counsel was not ineffective for failing to file a motion to quash.

■■■■ When a court tests the sufficiency of an indictment, it does so facially, considering the indictment as just a pleading. *See State v. Rosenbaum,* 910 S.W.2d 934, 948 (Tex.Crim.App.1994) (op. on reh'g). Thus, the trial court may not consider evidence or matters of proof when ruling on a motion to quash or set aside an indictment. *See Shipp v. State,* 331 S.W.3d 433, 434 n. 7 (Tex.Crim.App.2011). The trial court may only consider whether the face of the indictment sets forth enough information, in plain and intelligible terms, to enable the defendant to prepare his defense. *See Castillo v. State,* 689 S.W.2d 443, 447 (Tex.Crim.App.1984). A motion to quash should be granted only when the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of

the acts he allegedly committed. *See De-Vaughn v. State,* 749 S.W.2d 62, 67 (Tex. Crim.App.1988).

To test the sufficiency of the indictment in this case, we begin our analysis with the elements of the alleged offense. A person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate as a member of a criminal street gang, the person commits or conspires to commit one or more object offenses, such as murder. *See* Tex. Penal Code § 71.02(a)(1). The State did not allege that Diaz himself committed a murder. Instead, the State alleged that Diaz conspired to commit a murder with the members of his gang.

The phrase "conspires to commit" means that "a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement." *Id.* § 71.01(b). Thus, to obtain a conviction under the conspiracy theory for engaging in organized criminal activity, the State was required to prove that Diaz had the requisite criminal intent and that he performed an overt act in furtherance of an agreement to commit murder. *See Barber v. State,* 764 S.W.2d 232, 235 (Tex.Crim. App.1988).

The term "overt act" is not defined in the Penal Code, nor is the word "overt." However, the word "act" is statutorily defined, and it "means a bodily movement, whether voluntary or involuntary, and includes speech." *See* Tex. Penal Code § 1.07(a)(1). The common and ordinary meaning of "overt" is "open and observable; not concealed or secret." *See* Black's Law Dictionary 1130 (7th ed.1999). Therefore, an overt act requires bodily

movement or speech that is open and observable.

The Court of Criminal Appeals has provided additional guidance on the meaning of overt acts. The Court has explained that an overt act "need not be criminal in itself." See Otto v. State, 95 S.W.3d 282, 284 (Tex.Crim.App.2003). Also, the Court has held that an overt act may be established by acts that would suffice for party liability, such as those that encourage, solicit, direct, aid, or direct to aid the commission of the underlying offense. Id.

▪ The indictment alleged that Diaz performed five overt acts in furtherance of his conspiracy. Those allegations were as follows:

1. Diaz "was present with other members as orders to kill the complainant were given."
2. Diaz "was present when the complainant was called to lure the complainant to a specific location."
3. Diaz "traveled to the location where the complainant was shot."
4. Diaz "witnessed other members shoot the complainant."
5. Diaz "drove away with members who shot the complainant."

Because the State must only allege one overt act for the indictment to be sufficient, we turn to the third and fifth allegations in the indictment, which provide that Diaz "traveled to" and "drove away" from the scene of the murder with the members of his gang. The State contends that these are overt acts because traveling and driving are open and observable, and their performance generally requires bodily movements. The case law supports that notion. See, e.g., Underwood v. State, 967 S.W.2d 925, 930 (Tex.App.–Beaumont 1998, pet. ref'd) (concluding that the defendant had performed an overt act in furtherance of a conspiracy when he asked a woman if she wanted to engage in a drug transaction and then drove to a location with a passenger who was holding more than six grams of crack cocaine); Turner v. State, 720 S.W.2d 161, 164 (Tex.App.–San Antonio 1986, pet. ref'd) (concluding that the defendant had performed an overt act in furtherance of a conspiracy when he drove a car to a location and staged the scene to look as though the car's owner had been abducted).

In the Underwood and Turner cases, the evidence showed that the person who performed the overt act was the actual driver of a vehicle. The indictment in this case did not specify whether Diaz was a driver or a passenger, which is ultimately a matter of proof. Colloquially speaking, Diaz could have been either a driver or a passenger under the language of the indictment. See, e.g., Sorto v. State, 173 S.W.3d 469, 473 (Tex.Crim.App.2005) (describing how an abductor and two abducted women "drove away" in a single car, but indicating that the abductor was the only one who actually drove the car). If the State had proof that Diaz traveled to the scene of the murder because he was driving his fellow gang members there, knowing they intended to commit a murder, there would be no question that Diaz had performed an overt act.

Without considering any evidence, we conclude that the indictment alleges an overt act on its face. Because the indictment does not fail to convey a requisite item of notice, there would have been no basis for granting a motion to set aside the indictment had one been filed. Cf. Nichols v. State, 653 S.W.2d 768, 770–71 (Tex. Crim.App. [Panel Op.] 1981) (concluding that an allegation that the defendants had "met" with other co-conspirators was sufficient to state an overt act). Accordingly, counsel could not have been ineffective for

the first reason stated in Diaz's motion for new trial.

## II. Counsel failed to properly advise Diaz about his options.

We now address the third ground asserted in Diaz's motion for new trial, which is closely related to the second ground. Diaz argued, and the trial court found, that counsel was ineffective because counsel failed to advise Diaz about his option of pleading not guilty and, if convicted, of challenging the sufficiency of the evidence to show that he had performed an overt act. Unlike the previous claim that counsel had failed to file a motion to set aside the indictment, this claim of ineffectiveness allows for consideration of evidence and other matters of proof beyond the face of the indictment. *See State v. Seibert,* 156 S.W.3d 32, 37–38 (Tex.App.–Dallas 2004, no pet.).

The evidence from the hearing on the motion for new trial supports the trial court's finding that counsel did not advise Diaz about all of his options, and in particular, his legal defenses. Although counsel testified that he told Diaz that the evidence might be insufficient to sustain a conviction, and that there would be an opportunity for appeal in the event of a conviction, Diaz controverted that testimony when he asserted that counsel never told him about any legal defenses. According to Diaz, counsel said that his "only real option" was to plead guilty, which would totally remove the possibility of challenging the sufficiency of the evidence on appeal.

The trial court, as the sole finder of fact, was free to resolve this conflict in the testimony. In accordance with our standard of review, we must presume that the trial court resolved the conflict in favor of Diaz when it found that counsel had not "properly advised his client about ... what

his options were." That finding is also consistent with counsel's testimony that he did not specifically advise Diaz that he could appeal on the basis that the evidence was legally insufficient to show that he had performed an overt act.

If Diaz had a viable legal defense, counsel had a duty to advise Diaz of that defense because the validity of the guilty plea depended on Diaz making a voluntary and intelligent choice among the alternative courses of action available to him. *See Savino v. Murray,* 82 F.3d 593, 599 (4th Cir.1996) (citing *Hill,* 474 U.S. at 56, 106 S.Ct. 366); *cf. Roe v. Flores–Ortega,* 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (holding that counsel has a "constitutionally imposed duty" to consult with the defendant about an appeal when there is reason to think that a rational defendant would want to appeal). The record supports a finding that Diaz could have had such a defense.

Diaz asserted that he was just a backseat passenger. Although he rode in the gang leader's car to the scene of the murder, knowing that a murder was about to be committed, Diaz asserted that he did nothing more than watch the murder as it occurred. These asserted facts are analogous to the evidence in *Kunkle v. State,* 771 S.W.2d 435 (Tex.Crim.App.1986).

In *Kunkle,* the question was whether the trial court erred by refusing to instruct the jury that one of the witnesses was an accomplice. The evidence showed that Tom Sauls, the witness at issue, was a backseat passenger in a car, which was occupied by four of his other friends. *Id.* at 437. On a drive to the beach, the friends discussed the possibility of committing a robbery, but Sauls did not contribute to the discussion. *Id.* Once at the beach, the group exited the car, and Sauls continued to overhear some of his friends suggesting that they should rob someone.

*Id.* Again, Sauls did not contribute to the discussion. *Id.*

All five individuals eventually returned to the car, where Sauls reclaimed his seat as a backseat passenger. *Id.* The group then drove to a convenience store, where two of the friends completed a robbery. *Id.* Sauls remained in the car and did not participate in the robbery or share in its proceeds. *Id.* The group left the convenience store and drove around in search of another victim, until a man was found walking on the side of the road. *Id.* After persuading the man to enter the vehicle, the friends took him to a secluded location, shot him in the head, and stole his wallet. *Id.* at 437–38.

The evidence showed that Sauls knew about the planned robberies, but did not protest prior to their commission. *Id.* at 438. The evidence also showed that Sauls did not encourage the other members of his group; he did not assist them in either finding the victim or in serving as a lookout; and—unlike his friends—he did not participate in any of the crimes committed. *Id.* at 439–40. The Court of Criminal Appeals held that because Sauls had not performed an "affirmative act" to assist in the commission of an offense, he was not an accomplice and the trial court did not err by refusing to give the jury an accomplice-witness instruction. *Id.* at 439, 441.

■ Like Sauls, Diaz claimed that he was only a backseat passenger who knew that the people around him intended to commit a crime. Also like Sauls, Diaz asserted that he was just a witness, and he played no other role in the commission of a crime. Counsel believed this version of the events, testifying that his impression was that Diaz was "just a witness."

On these facts and the law applicable to them, Diaz could have had a viable legal defense that he did not perform an overt act, and counsel should have advised Diaz about that defense and his option of pleading not guilty. *See Florida v. Nixon*, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) ("An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy."); *Hill*, 474 U.S. at 59, 106 S.Ct. 366 (discussing how a claim of ineffectiveness may be predicated on counsel's failure to advise the defendant about potential affirmative defenses).

We conclude that the trial court acted within the zone of reasonable disagreement when it found that counsel's performance was deficient. Because the State does not challenge the trial court's finding as to prejudice, we further conclude that the trial court did not abuse its discretion by granting the motion for new trial.

## CONCLUSION

The trial court's order granting the motion for new trial is affirmed.