L. B. GRANT, *alias* MR. WILSON V. THE STATE.

No. 21080.   Delivered May 22, 1940.
Rehearing Denied October 16, 1940.

The opinion states the case.

*W. C. Wofford,* of Taylor, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft. The punishment is confinement in the State penitentiary for a term of five years.

This is a companion case to that of N. F. Walker, alias Mr. Wallace, v. State, (No. 20,991), decided by this court on the 8th day of May, 1940, but not yet reported. (139 Texas Crim. Reports, 623). The facts in the present case are in all essentials similar to those in that case. Therefore, we do not deem it necessary to reiterate the same here. A mere reference to that case is sufficient.

By Bill of Exception No. 1 appellant complains of the testimony given by A. P. Andres relating to a certain conversation between the witness and N. F. Walker on the day in question tending to pave the way for the successful operation of a scheme existing between appellant and his co-conspirator to fleece innocent and unsuspecting people of their money. The testimony shows that appellant was maneuvering the victim, not only into a frame of mind, but also into a physical position to

be easily victimized. The bill is quite lengthy, covering five pages of legal-cap paper. We see no need of setting out the alleged objectionable testimony. Any act done in furtherance of the original scheme or conspiracy during its pendency, even though it be out of the presence of one or more of the co-conspirators, is admissible in evidence. See Johnson v. State, 78 S. W. (2d) 965; Morphey v. State, 45 S. W. (2d) 1099; Williams v. State, 13 S. W. (2d) 112; Branch's Ann. Tex.. P. C., Sec. 694. Appellant seems to recognize the rule of evidence relating to acts and declarations of co-conspirators, in the absence of one or more of the conspirators, during the pendency of the conspiracy. His contention seems to be, however, that no conspiracy between the alleged conspirators had been shown to exist at the time of the alleged acts and conduct of Walker. The existence of a conspiracy can seldom, if ever, be shown by direct and positive evidence. Their work is done in secrecy and under cover. Consequently, resort must be had to circumstances from which the existence of the conspiracy is logically deducible. Therefore, the conspiracy cannot, as a general rule, be shown by one witness or one circumstance, but by many which, when connected up and woven into a chain, connect the parties in their unholy alliance. This evidence was one of the links in the chain of circumstances showing how the victim was led into the web as the spider led the fly into its web (by inviting the fly into its parlor).

By Bill No. 2 appellant complains of certain remarks made by the court in reply to an inquiry by appellant's counsel if he might have a full bill of exception, to all of the testimony given by the complaining witness, Andres, relating to what Walker did and said in the absence of the appellant, Grant. This bill is qualified by the court who states in his qualification that no objection was made by appellant or his counsel to any remark by the court; that he merely objected to the testimony. The bill was accepted by appellant as qualified and he is bound thereby. The bill as thus qualified fails to show any reversible error.

Bill No. 3 shows that the victim testified that he went to the bank and drew $1200.00 for which he obtained from appellant twelve white chips representing $100.00 each, which he put into the pot; that when the game finally terminated, he had seventeen of the white chips in his pocket which appellant declined to cash, claiming that the witness had taken them from the table. He was then asked if he had known that the chips were not going to be cashed (redeemed) would he have

put his $1200.00 into that kind of a game. Appellant objected to the question on the ground that what he would do and would not have done under the circumstances was immaterial and. irrelevant and was an attempt on the part of the State to bolster up its own witness. We are of the opinion that this bill is without merit. Appellant was either told or induced to believe that the banker of the game would cash and redeem the poker chips. Consequently, the State had a right to ask him if he had known that the chips would not be cashed would he have put up $1200.00 for twelve chips? It does not seem to us that it would require much intelligence to know what any man would do under such circumstances.

Bill of Exception No. 4 complains of the following testimony given by A. P. Andres, the complaining witness:

"I got in the car with Mr. Wallace and Mr. Wallace said, 'I will take you home.' And I said, 'No, I don't want you to take me home'; and we went up the highway a piece and he stopped and said, 'Give me those seventeen white chips, and I will give you your money.' And I told him that I wouldn't do that. 'I told him that I wasn't going to give him these seventeen white chips.' I said, 'I won't do that'; and he said, 'Well, then get off.' I said, 'I won't do either; you told me you would take me to town.' And he reached in his hip pocket and said, 'Damn it, I told you to get off, and I mean "git." ' And I got off, and when he started off Mr. Wilson was down there a piece."

The witness further testified, over the same objections by the defendant and. under the same ruling by the Court, on redirect examination with reference to the conversation as follows:

" 'I told him (Walker) that I was going to tell the officers; Walker at that time told me if I would give him those chips he would go back and try to get Grant to give me my money back. This defendant had already gotten the money and Walker had to ask him for it. Mr. Walker said, 'Give me the seventeen chips and I will go back and get the $1200.00.' He was going to see Wilson; and I said, 'No, I made you that proposition a half dozen times and you wouldn't do it.' And he said, 'Get out of here.' And I said, 'I won't do it.' I said, 'You told me you would take me back to town'; and he said, 'Damn it, I told you to get off, and I mean it!' Walker said he would have to go back and ask Grant to get the money. Yes, if he had had the money right there he wouldn't have had to go back and ask him—he would have had it on his person. He had to go back and ask the de-

fendant whether or not he would give him the money. QUESTION: Mr. Wofford asked you whether or not when you were coming in from Walburg to Bartlett—Walker didn't tell you the defendant here was a big gambler—I will ask you to state what kind of a man Walker told you the defendant was? ANSWER: He told me he was a big oil man. As to whether or not he said he was a big gambler; he said he was a big sport; that he would rather play cards than eat; that he was a big oil man."

To which appellant objected on the ground that at the time of the alleged acts and conversations the parties had separated and the conspiracy had terminated. The court in his qualification of the bill states: "The Jury would have been warranted in finding that the conspiracy was not finally terminated until they had gotten away with the money, and the testimony of the State showed that the defendant and N. F. Walker left Bartlett; after refusing to pay for the seventeen white chips, in company with each other; and the State's testimony further showed that they were together on a subsequent occasion engaging in a similar transaction for which the defendant stands charged in this case."

In our opinion, the bill as qualified fails to show error. They had not yet obtained the chips from their victim which was a circumstance supporting his theory that after they led him into the poker game they induced him to give them money for the chips which were to be cashed or redeemed. They knew these chips might be used as evidence supporting the complaining witness as to the poker game, and it may have been a part of their original scheme by some ruse to dispossess the victim thereof and remove the mute and silent evidence. If so, the evidence was admissible. Moreover, the evidence shows that the loot had not yet been divided.

Bills of Exception Nos. 5 and 6 are, in our opinion, without merit and are overruled.

Bill No. 7 shows that Walker, one of the conspirators, appeared at Taylor about the time the alleged offense was committed and resorted to the same means, method and tactics to inveigle Jerry Drozda into a poker game with appellant as he did the complaining witness, Andres. This testimony was admissible for the purpose of showing system and the general scheme of the conspirators.

In Bill No. 8 appellant complains of the testimony of Damon Sharp which is in effect similar to that given by

Drozda. Walker used the same means and method to induce Sharp to engage in a poker game with appellant as he did Drozda. This testimony was admissible for the same reason as that of Drozda.

The testimony given by N. P. Schumann was also admissible as showing system and intent.

Bills of Exception Nos. 10, 11 and 12 are without merit.

By Bill of Exception No. 13 appellant complains of the following remarks by the Assistant District Attorney in his argument to the jury: "The evidence in this case shows that the defendant, L. B. Grant, was arrested at Jasper, Texas, and who was with him? This same N. F. Walker."

Appellant objected to the remarks on the ground that there was no evidence in the record that at the time the defendant was arrested, N. F. Walker, was with him and the same was highly prejudicial. There is no certificate by the court to the effect that Walker was not with appellant at the time. Such merely appears from the appellant's objection. Hence, the bill is deficient and not subject to consideration. In the case of Viley v. State, 244 S. W. 538, this court expressly said: "The mere statement of grounds of objection in a bill of exceptions is not equivalent to, nor does it do away with the necessity for, a showing in such bill that the matters stated as grounds of objection are facts." See Fowler v. State, 232 S. W. 515; also Tex. Jur., Vol. 4, p. 309, sec. 215.

We think that the court's instruction as to the law of principals was required. That appellant and Walker, alias Mr. Wallace, were acting together in the unlawful enterprise was abundantly shown by the evidence.

Appellant's objection to the court's charge on principals is without merit. It is our opinion that the facts of this case required an instruction by the court on the law of principals.

Finding no reversible error in the record, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

After carefully re-examining the record in the light of the

motion for rehearing we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.