James Douglas **TURNER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–86–00100–CR.

Court of Appeals of Texas, San Antonio.

Oct. 15, 1986.

Rehearing Denied Nov. 12, 1986.

Frederick J. Deyeso, San Antonio, for appellant.

Rogelio Munoz, Uvalde, for appellee.

Before BUTTS, CANTU and TIJERINA*, JJ.

## OPINION

BUTTS, Justice.

After appellant's conviction by a jury for the offense of conspiracy to commit murder, TEX.PENAL CODE ANN. § 15.02 (Vernon 1974), the court assessed punishment at 20 years' imprisonment and a fine of $10,000.00.

■ In his first point of error appellant maintains his motion for instructed verdict should have been granted because the indictment against him charged conspiracy to commit *murder,* but the coconspirator was convicted of *voluntary manslaughter.* He argues that the coconspirator's prior conviction of voluntary manslaughter, in effect, is an acquittal of the object offense of murder which operates as a defense in his case, entitling him to acquittal. The pertinent provisions of the conspiracy statute, § 15.02, *supra,* are:

(a) A person commits criminal conspiracy if, with intent that a felony be committed:

(1) he agrees with one or more persons that they or one more of them engage in conduct that would constitute the offense; and

(2) he or one or more of them performs an overt act in pursuance of the agreement.

(b) An agreement constituting a conspiracy may be inferred from the acts of the parties.

(c) It is no defense to prosecution for criminal conspiracy that:

(1) one or more of the coconspirators is not criminally responsible for the object offense; [or]

\*    \*    \*    \*    \*    \*

(3) one or more of the coconspirators has not been prosecuted or convicted, *has been convicted of a different offense,* or is immune from prosecution; (Emphasis added).

\*    \*    \*    \*    \*    \*

A conspiracy to commit a crime is a separate and distinct crime from the substantive or "object" offense. *McCann v. State,* 606 S.W.2d 897, 898 (Tex.Crim.App. 1980). Commission of the substantive offense is not an essential element of the conspiracy charged. *Id.* Whether or not

---

\* Associate Justice Tijerina not participating.

appellant could have been charged with "conspiracy to commit voluntary manslaughter" and not murder, as appellant submits, is not a question in this case. Therefore the disposition of the coconspirator's case will not serve as a defense to criminal conspiracy to commit murder. The point of error is overruled.

In point of error two appellant argues the verdict is contrary to the law and the evidence since appellant's confession shows that the agreement, if any, occurred after the commission of the offense.

The evidence, other than any confession, shows that on January 9, 1985, the body of a woman was discovered in a wooded area off the road near the Atascosa River in Medina County. The body was that of Tammie Brown, wife of appellant's half-brother and coconspirator, Patrick Brown. Appellant and Brown went to the Devine Police Department on January 2, 1985, to report Tammie missing. The husband told the officer there that he and Tammie argued on New Year's Eve and she left in the Mustang automobile. As the result of the missing person report, the law enforcement officers began searching for Tammie. The evidence of officers who investigated the case was that a large scale hunt was begun after the report and continued until the body was located. A young woman had turned in a purse earlier which she reported finding in a bar ditch several yards from a local dance hall in Medina, the "Cowtown Dance Hall." This was determined to belong to the deceased. The search yielded the location of the Mustang automobile which the husband said Tammie was driving when she left their home the night she disappeared. Found in the parking lot of the "Cowtown," the Mustang offered no other clues to the disappearance.

Tammie's mother testified that the husband telephoned her on the morning of January 1, 1985, and asked her if she had heard from or seen Tammie, that she had left after the couple had an argument, and he had not seen her since then. The young Browns resided in a trailer home with their four-year-old son and her slightly older daughter by a previous marriage. Appellant lived there also.

Appellant along with his brother appeared to aid in the massive hunt for the young woman, the husband giving officers the name of the missing woman's friends and relatives. Although the two coconspirators had been told by officers not to drive the Mustang, appellant drove it to San Antonio during the time the search continued.

■ One of the essential elements of criminal conspiracy is an agreement to commit the offense. *Williams v. State*, 646 S.W.2d 221, 222 (Tex.Crim.App.1983). The corpus delicti of conspiracy must contain a showing of agreement to commit a crime. *Brown v. State*, 576 S.W.2d 36, 42 (Tex.Crim.App.1979) (on rehearing). Appellant contends the evidence failed to disclose an agreement. We disagree.

Appellant does not argue there is no showing of an agreement because his confession, which was introduced in evidence, stands alone, that is, there was no corpus delicti. Rather, his argument is that the confession itself fails to show an agreement. While appellant does not contest lack of proof of the corpus delicti, we note that the activities already discussed as related by witnesses at the trial furnish an adequate corpus delicti, provided an agreement was proved, to corroborate the appellant's confession. In addition, the coconspirator's confession was introduced by appellant. While that statement does not speak of a specific agreement, it does provide corroboration for some inculpatory activities admitted in appellant's confession. Appellant's confession, states, in pertinent part:

\* \* \* \* \* \*

Within the week before Monday, 12–31–84, Pat and I got this idea that we were going to blow up Tammie Brown in her car but we changed our mind (sic).

On Saturday 12–29–84 Pat was going to get into an argument and hit her on the head or whatever. I was supposed to be at the house but I backed out.

Monday 12–31–84 at about 7:00 P.M., 7:30 P.M. or 8:00 P.M. Pat and Tammie went into their bedroom, while me (sic) and Billy (Pat's son)· were sitting on the couch in the living room playing. Pat shut the door to their bedroom. At this time I went through in my mind whether we should kill her or not. Without making the decision I heard three blows. I heard a thud, a crash, a thud and a thud.

Pat came into the living room and handed me a pair of surgical gloves. Pat got these gloves from the Veterinary Clinic when the doctor wasn't looking. I put the gloves on. I believe Pat told me to take the car meaning the Mustang to Cow Town. I am not sure if Pat told me to do this at this time or if it was decided between the two of us when we were talking about killing her before.

Billy and I then took the car to Cow Town. I told Billy I was going to take him to see Firecrackers. I told Billy to lay down when we got to Cow Town.

About 15 or 20 minutes later Pat picked Billy and me up in the blue Chevy pickup.

We went back to the house and we cleaned everything up. There was blood on the floor in their bedroom buy (sic) the foot of the bed. There was blood by the back door also. There was blood in the back yard and there was blood in the bed of the blue Chevy Pickup. We washed the blood out of the floor with shampoo and cold water. We washed the blood out of the pickup with cold water and blood in the back yard by just letting the hose run on it.

While we were washing everything Pat told me, I can't believe I did it, I carried her off on the other side of Cow Town on a back road. Pat said he stabbed her in the back to make sure she was dead.

When Pat picked me and Billy up at Cow Town Pat threw Tammie's purse out of the truck into the bar ditch.

I don't know if Pat told me what he stabbed Tammie with but later I saw a Schrade Hunting Knife I think in the kitchen after everthing (sic) sort of set-tled down but the same night of 12–31–84 and I cleaned it. It had a dingy brown substance on the blade and later Pat told me that was the knife he had used. Pat told me he had wiped the blade off on his pants. At this time I don't know where the knife is, the last time I saw it was when I washed it.

\* \* \* \* \* \*

■■■ To be a coconspirator, one must know that an offense is to be committed and agree in advance to aid in its commission. *Thrash v. State*, 170 Tex.Cr.R. 97, 338 S.W.2d 447, 449 (1960). However, direct evidence of a formal agreement is not required. A conspiracy to commit a crime can seldom, if ever, be shown by direct and positive evidence. The conspirators' work is done in secrecy and under cover. Consequently, resort must be had to circumstances from which the existence of the conspiracy is logically deducible. *Grant v. State*, 140 Tex.Crim. 46, 143 S.W.2d 383, 384 (1940). The agreement between the brothers to commit the murder may be inferred from the circumstances. *Mutscher v. State*, 514 S.W.2d 905, 912 (Tex.Crim.App. 1974), Section 15.02(b), *supra*. *White v. State*, 451 S.W.2d 497, 500 (Tex.Crim.App. 1970) (on rehearing). His confession also shows there was an agreement, which the surrounding circumstances corroborate:

... Pat and I got this idea ... but changed "our mind" [about the method of killing]. Pat was going to get into argument ... hit her on head. [ ... on second date, but appellant did not appear on the scene that time and nothing was done. On the third chosen date, New Year's Eve, appellant carried out his role. While the killing took place, appellant wondered whether "we" should kill her or not.]

He performed the overt acts of: being present to take care of Billy; driving the Mustang to the Cow Town Dance Hall. The reason for this action is that the inference could be made that Tammie parked her car in that parking lot, someone abducted her from the scene, threw her purse in the bar ditch nearby, and dumped the

body still farther away. This also illustrates the necessity for the presence of the second coconspirator, appellant, at the time the killing occurred. Removing the Mustang immediately could be inferred to be part of a plan or scheme; the deceased's mother lived in the next-door trailer home.

In addition to other acts by both parties in pursuance of the conspiracy, appellant helped to clean the blood from the trailer home, the pickup, the yard, and the knife. Further, he went to the police to report Tammie missing. He pretended to search for her. These subsequent acts tend to prove the nature of the conspiracy. The conspiracy would encompass not only the killing but also the "cover-up." Moreover, a conspiracy is not finally terminated until everything has been done that was contemplated to be done by the conspirators. *White v. State, supra*, 451 S.W.2d at 500. *See, Colunga v. State*, 527 S.W.2d 285, 288 (Tex.Crim.App.1975). Clearly in this case the act of parking the Mustang at a dance hall, telling Tammie's mother she had left home on New Year's Eve, placing the purse in the bar ditch and hiding the body nearby, cleaning up the blood, reporting the wife missing, searching for her ... all were acts by the parties in pursuance of the conspiracy. These acts reflect a single design of the coconspirators and their concerted action to achieve their goal.

We hold the jury could find the elements of the offense of conspiracy to commit murder beyond a reasonable doubt, including the essential element of an agreement. The verdict was not contrary to the law and the evidence in that the confession and other evidence reflect the agreement took place in advance of the commission of the offense. The second point is overruled.

■ The last point of error is that the State failed to disprove the coconspirator's confession which contained exculpatory statements in favor of appellant, thereby causing a verdict contrary to the law and evidence. The reliance of this theory of law, explained in *Palafox v. State*, 608 S.W.2d 177 (Tex.Crim.App.1979) is misplaced. Appellant, and not the State, introduced the coconspirator's confession. The rule does not apply to this case. *See, Richards v. State*, 511 S.W.2d 5 (Tex.Crim.App. 1974). The point is without merit.

The judgment is affirmed.