Douglas WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–00–00552–CR.

Court of Appeals of Texas,
San Antonio.

May 15, 2002.

Rehearing Overruled June 11, 2002.

Discretionary Review Refused
Oct. 9, 2002.

558

Suzanne M. Kramer, Attorney At Law, San Antonio, for Appellant.

Michael P. Miklas, III, Asst. Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice and SANDEE BRYAN MARION, Justice.

## OPINION

SANDEE BRYAN MARION, Justice.

This appeal arises from Douglas Williams's ("defendant") conviction of the capital murder of David Alejandro, for which he was sentenced to life in prison. Defendant now appeals his conviction arguing that the trial court abused its discretion when it denied the motion to suppress his statement and when it admitted the videotape of the crime scene and physical evidence found at the crime scene. Defendant also contends that the evidence is legally and factually insufficient to sustain his conviction. Because we find that the trial court did not abuse its discretion and the evidence is legally and factually sufficient, we affirm.

### DISCUSSION

#### Motion to Suppress

##### *Standard of Review*

In defendant's third issue, he contends that the court abused its discretion when it denied his motion to suppress his statement. We review the trial court's denial of defendant's motion to suppress under an abuse of discretion standard. *See Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). Under this standard, the trial court's findings of fact are given "almost total deference"; however, we review the trial court's application of the law to these facts *de novo. Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000).

##### *Discussion*

Defendant argues that his statement was taken during a custodial interrogation, but he was not read his rights, as mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant insists that his rights were not safeguarded and that article 38.22 of the Texas Code of Criminal Procedure required the exclusion of his statement at trial. The State counters that defendant's statement was voluntary and given in a

non-custodial setting; therefore, article 38.22 is not applicable.

■ Article 38.22 and *Miranda* apply only to statements made during a custodial interrogation. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 3 (Vernon Supp.2002), § 5 (Vernon 1979); *Lam v. State*, 25 S.W.3d 233, 239 (Tex.App.-San Antonio 2000, no pet.). They do not apply to voluntary statements resulting from a non-custodial interrogation. *Lam*, 25 S.W.3d at 239. Custodial interrogation is questioning initiated by law enforcement after a person has been taken into custody or otherwise been deprived of his freedom in any significant way. *Cannon v. State*, 691 S.W.2d 664, 671 (Tex.Crim.App.1985). To ascertain whether an individual is in custody, a two-step analysis is employed. First, a court examines all the circumstances surrounding the interrogation to determine whether there was a formal arrest or restraint of freedom of movement to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). This initial inquiry focuses on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the individual being questioned. *Id.* at 323, 114 S.Ct. 1526. Second, a court considers, in light of the given circumstances, whether a reasonable person would have felt he or she was at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

■ In this instance, the trial court conducted a motion to suppress hearing at which both Detective Thomas Matjeka and defendant testified. Detective Matjeka testified that the day after the crime was committed, he and Detective Danny Gonzales located the defendant at his friend's house. When the detectives arrived at the house, they asked to speak to him privately. During that conversation, Detective Matjeka told defendant that Steve Russell had given a statement about the murder and that he wanted the defendant to give his version of the story. Defendant was also told that he was not under arrest nor was he obligated to discuss the case or accompany the detectives to the station. Defendant agreed to the interview. The detectives then gave the defendant a ride to the station, but he was not handcuffed nor was he read his *Miranda* rights.

When they arrived at the station, Detective Matjeka took defendant into the interview room, offered him food, cigarettes, and a beverage, and told him, again, that he was not under arrest and that he could leave at the completion of the interview. When the interview was over, defendant's statement was recorded and he signed it. The detectives then returned him to his friend's house. Detective Matjeka testified that at no time during the process did he coerce or threaten defendant in any way.

Defendant, on the other hand, testified that he was forced to give a statement. According to defendant, when the detectives arrived at his friend's house, they told defendant that "you can come down quietly, make a statement and we'll not arrest you ... or we'll arrest you're a— right now for capital murder." Defendant also testified that he did not want to sign the statement, but the detectives prevented him from leaving without first signing the document. After the hearing, the trial court concluded that defendant's statement should not be suppressed.

Based on the record and the court's findings and conclusions, we cannot say there was an abuse of discretion. The evidence shows that the detectives requested defendant's presence at the police station so that he could give a statement. Defendant, in fact, admitted that he was

never physically forced to accompany the detectives to the police station nor was he coerced to cooperate, through threats or ultimatums. Furthermore, defendant was never placed under arrest, he was not handcuffed, and he was told, at least twice, that he was permitted to leave at any time. During the interview, defendant was placed in an interview room, questioned for approximately an hour and a half, and offered cigarettes, food, and a beverage so that he could be more comfortable. Finally, when the interview concluded, defendant was allowed to read his statement, make corrections, sign it and then he was given a ride back to his friend's house. Given this evidence, we find that defendant's freedom of movement was not restrained and that a reasonable person, in defendant's situation, would have felt that he had the liberty to terminate the interview. *See Stansbury*, 511 U.S. at 322, 114 S.Ct. 1526; *see Thompson*, 516 U.S. at 112, 116 S.Ct. 457.

■ Finally, although defendant testified that he was intimidated into cooperating with the police officers and that he signed the statement against his will, the trial court is the exclusive judge of credibility and is free to disbelieve any part of the his testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *Castro v. State*, 914 S.W.2d 159, 162 (Tex. App.-San Antonio 1995 pet. ref'd). The court chose to reject defendant's version of the facts, and we are required to defer to his findings on that matter. *See Carmouche*, 10 S.W.3d at 327–28. Accordingly, we conclude that no custodial interrogation occurred and that section 38.22 does not apply here. Defendant's claim is therefore overruled.

## Admission of Evidence

### *Standard of Review*

■ Also in defendant's third issue, he contends that the trial court abused its discretion when it admitted a videotape of the crime scene and admitted certain physical evidence found at the crime scene. The decision to admit or exclude evidence is within the discretion of the trial court. *See Mozon v. State*, 991 S.W.2d 841, 846 (Tex.Crim.App.1999). That discretion is, of course, subject to the constraints of the rules of evidence, statutes, and state and federal constitutions. *See* Tex.R. Evid. 101(c); *see Lopez v. State*, 18 S.W.3d 220, 222–23 (Tex.Crim.App.2000). This court will not reverse a trial court's ruling unless it is outside of the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

### *Admission of the Videotape*

■ Defendant complains that the trial judge overruled his objection to the admission of the video of the crime scene without conducting the balancing test as required by Rule 403 of the Texas Rules of Evidence. Defendant asserts that because the trial court did not review the videotape before ruling on its admissibility, the court did not conduct the balancing test. Furthermore, defendant insists that because the videotape's probative value was substantially outweighed by the danger of unfair prejudice, it was error to admit it. It is true that Rule 403 requires a court to weigh evidence to determine if its probative value is substantially outweighed by the potential for causing undue prejudice. Tex.R. Evid. 403; *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997). But the trial judge is not required to conduct the balancing test during a formal hearing held for that purpose nor is he obligated to announce on the record that he has, in fact, conducted and completed the balancing test in his own mind. *Yates v. State*, 941 S.W.2d 357, 367 (Tex.App.-Waco 1997,

pet. ref'd); *see also* (*Howland v. State*, 966 S.W.2d 98, 103 (Tex.App.-Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim.App.1999)).

■ In this instance, the trial court heard testimony from one of the investigating officers, who testified that the video accurately portrayed the crime scene. The defendant objected to the admissibility of the video arguing that it contained hearsay, lacked relevancy, was cumulative, and that under Rule 403, the probative value of the depictions in the video were substantially outweighed by the danger of unfair prejudice. The judge sustained the hearsay objection and ordered the State to turn down the volume when the video was shown to the jurors. The judge, however, overruled defendant's additional objections to the video. The record shows that the judge entertained defendant's Rule 403 objection, considered it, and overruled it. *See Yates*, 941 S.W.2d at 367. Therefore, based on this record, we find that the trial court properly conducted a Rule 403 balancing test.

In addition, we find that the trial court did not abuse its discretion when it admitted the videotape. Videotapes are considered in the same manner as photographs. *See* Tex.R. Evid. 1001(a). Like still photographs, videotapes may be admitted into evidence when they are properly authenticated, relevant to the issues, and not violative of the rules established for the admissibility of photographs. *Gordon v. State*, 784 S.W.2d 410, 412 (Tex.Crim.App.1990). The identification of the victim and the "manner and means of death are facts that are of consequence to the determination of the controversy" in a murder case and are therefore relevant. *Cf. McFarland v. State*, 845 S.W.2d 824, 841 n. 9 (Tex.Crim. App.1992). Additionally, it has been held that when a verbal description of the crime scene is admissible, the photograph or vid-

eotape of the scene is also admissible. *See Gordon*, 784 S.W.2d at 412. Here, Officer Jason Rozacky, the State's witness, viewed the videotape and verified its authenticity. The videotape depicts the outside of the victim's studio, the disarray of the reception area, the blood on the walls, and the placement of the victim lying face down on the floor. Officer Rozacky then provided a detailed verbal description of how the crime scene appeared when he arrived. Furthermore, the State offered several pictures of the victim and the crime scene itself which were admitted into evidence. We find that the video merely presented a three dimensional perspective of the evidence that was already before the jury. Therefore, we conclude that the trial court did not abuse its discretion when it allowed the videotape into evidence.

### Conditional Evidence

■ Defendant also claims that the trial court erred when it allowed the admission of certain evidence, which was conditionally admitted, because the State failed to connect this prejudicial evidence to him. Under the doctrine of "conditional relevancy," a trial judge may admit evidence on the condition that the party offering the evidence authenticate it, or "connect it up," at a later time. *Powell v. State*, 898 S.W.2d 821, 829 (Tex.Crim.App. 1994); *see Fuller v. State*, 829 S.W.2d 191, 198–99 (Tex.Crim.App.1992). If sufficient "connecting" evidence does not appear by the close of the proponent's evidence, the opposing party must renew his original objection by a motion to strike the conditionally admitted evidence. *Id.* Failure to do so constitutes waiver by the opposing party for purposes of appeal. *Id.*

Defendant primarily complains about the physical evidence obtained from the crime scene and from the vans that were at the crime scene, such as the movie tickets, the black duffel bags, a polo shirt,

various pieces of music equipment, the terry cloth towels, and a pair of khaki dockers. The record reveals that defendant did not move to strike the evidence until after he finished his case in chief. This motion to strike was untimely and failed to preserve any alleged error for our review. *Powell,* 898 S.W.2d at 829. Accordingly, we find that defendant has waived his complaint on appeal.

In conclusion, we find that defendant's motion to suppress and evidentiary challenges are without merit. Therefore, we overrule his third issue.

### Sufficiency of the Evidence

#### *Standard of Review*

In his first and second issues, defendant argues that there is legally and factually insufficient evidence to support his capital punishment conviction. We review the sufficiency of the evidence under the traditional standards of review. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (legal sufficiency); *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999) (same); *Cain v. State,* 958 S.W.2d 404, 407 (Tex. Crim.App.1997) (factual sufficiency); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996) (same). The standard of review is the same in both direct and circumstantial evidence cases. *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App. 1999).

#### *Discussion*

Defendant was charged with capital murder and the jury was instructed that he could be found guilty either as a party to the murder or under the theory of criminal conspiracy. A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02 (Vernon 1994). A person can be convicted of capital murder if he "intentionally commits the murder in the course of committing or attempting to commit ... robbery." *Id.* § 19.03. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01. A person is criminally responsible for an offense committed by the conduct of another if:

\* \* \*

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

\* \* \*

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *Id.* § 7.02. Furthermore, a person commits criminal conspiracy if, with the intent that a felony be committed:

\* \* \*

(1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

(2) he or one or more of them performs an overt act in pursuance of the agreement.

(b) An agreement constituting a conspiracy may be inferred from acts of the parties.

\* \* \*

*Id.* § 15.02. Conspiracy is seldom shown by direct evidence but often must be

proved by circumstances from which the existence of the conspiracy is logically deducible. *Turner v. State,* 720 S.W.2d 161, 164 (Tex.App.-San Antonio 1986, pet. ref'd).

The evidence shows that defendant and Ray Jasper were long-time friends. Defendant and Jasper were part of an amateur music recording group, and they would often buy time at David Alejandro's music studio to record music tracks. Approximately a week before the murder, Jasper suggested to defendant that they should rob the music equipment from the studio. Defendant testified that he did not believe that Jasper seriously intended to commit the robbery. Defendant nevertheless complied with Jasper's request to book time at the studio from 8:00 p.m. to 10:00 p.m. on November 29, 1998. On that day, Steve Russell, Jasper, and defendant met at Jasper's house at approximately 7:00 p.m. Testimony from Christina Breton, Jasper's girlfriend, reveals that they "were going to rob and kill him," referring to Alejandro. She also testified that while defendant, Jasper and Russell were at the house, Jasper, and Russell loaded large black duffel bags into two minivans. Jasper and Russell then decided to drive the two minivans to the studio. On the way to the studio, Jasper and defendant stopped at a nearby theater to purchase tickets for a movie showing at 9:55 p.m., even though they had booked studio time until 10:00 p.m. that night.

The trio arrived at the studio at around 8:30 p.m. and defendant paid ninety dollars for the two hours that they reserved for recording. Although defendant testified that he was anxious to get to the studio and work on his music tracks, he loitered about the studio for about an hour. ·Defendant stood by the front door of the studio, stepped outside to smoke a cigarette, talked on the phone, lounged on the couch, read a magazine, and took a nap. This is consistent with Breton's testimony that defendant's job that night was to keep a lookout to ensure no one came into the studio.

After lounging around, defendant went to the back room of the studio where the equipment was located. Defendant asked Alejandro to help him with the music tracks. When Alejandro had his back turned to Jasper and Russell, he was attacked from behind. Defendant stated that he did not know what was happening until he heard strange noises, which prompted him to turn around. Defendant testified that when he saw Jasper and Russell attacking Alejandro, he panicked and ran from the studio. According to defendant, Jasper chased after him and forced him to return to the studio to load the stolen equipment into the duffel bags. Defendant claimed that he was reluctant to help with the robbery, but he felt compelled to do so because he was afraid of both Jasper and Russell.

While Jasper and Russell loaded the equipment into the vans, an off-duty sheriff's deputy, who was patrolling the apartment complex, approached the vans to investigate. When Jasper noticed the sheriff, he yelled "Five O," a prearranged signal, and all three men ran in different directions. Defendant testified that although the sheriff identified himself and ordered him to stop, he did not obey. Defendant claimed that he was afraid to comply with the order because the sheriff had threatened to shoot him in the back of the head. Instead, defendant ran until he found a garbage dumpster, where he hid. After hiding out, defendant called Chenelle Brown, Jasper's sister, who picked him up and took him over to Jasper's house.

A couple of days later, the police located defendant and asked him to give a state-

ment. In that statement, defendant outlined the chronology of the events of that night. Significantly, defendant confessed that he made the appointment knowing that Jasper and Russell intended to rob Alejandro that night. The statement also revealed that defendant saw a kitchen knife in the van when he was driving to the studio with Jasper, which he had never before seen in the van. Also according to his statement, after the murder, defendant gave Russell one of his polo shirts to change into because Russell's shirt was stained with blood. Defendant's confession is supported by his trial testimony and Breton's trial testimony.

 Here, we note that to convict defendant as a party, the evidence had to show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose. *Pesina v. State,* 949 S.W.2d 374, 382–83 (Tex.App.-San Antonio 1997, no pet.). This may be done with either direct or circumstantial evidence. *Id.* at 383. In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1994). Intent may be inferred from circumstantial evidence such as the acts, words, and conduct of the accused. *Patrick v. State,* 906 S.W.2d 481, 487 (Tex.Crim.App.1995). To assess whether the evidence is sufficient to show a defendant's intent, when the record supports conflicting inferences, we must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *Matson v. State,* 819 S.W.2d

839, 846 (Tex.Crim.App.1991). In this case, we find that there is legally and factually sufficient evidence to support defendant's conviction of capital murder. We therefore overrule defendant's first and second issues.

CONCLUSION

We affirm the trial court's judgment.