

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00538-CR

| | | |
|---|---|---|
| Johnathan Eugene Cooper | § | From the 43rd District Court |
| | § | of Parker County (CR09-0662) |
| v. | § | November 21, 2012 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00537-CR
### NO. 02-11-00538-CR

JOHNATHAN EUGENE COOPER          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In four points, appellant Johnathan Eugene Cooper appeals his convictions for online solicitation of a minor, which is a second-degree felony under the circumstances of this case, and aggravated sexual assault of a child, which is a first-degree felony.[2] We affirm.[3]

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B), (e) (West Supp. 2012), § 33.021(c), (f) (West 2011).

**Background Facts**

Kori[4] was thirteen years old when she contacted appellant through the internet. Appellant told her that he was a doctor. Kori invited appellant to her house, and appellant picked her up in his car one early morning in October 2008, when appellant was twenty-two years old. While knowing that Kori was thirteen years old, appellant had sex with her, and although Kori asked him to stop, he did not. Appellant did not wear a condom while having sex with Kori, and he told her that he was "going to make [her] have a baby." Kori got dressed, and appellant drove her home. Appellant later told Kori that he had once had sex with an eleven-year-old child and that he wanted Kori to bring a six-year-old girl to have sex with him. Kori told her mother and the police about what had occurred. The police received the pajama pants that Kori had worn on the night that she had sex with appellant. A forensic examination of those pants revealed the presence of appellant's semen.

A grand jury indicted appellant for online solicitation of a minor and for aggravated sexual assault of a child younger than fourteen years old by

---

[3]In October 2012, appellant sent this court a letter in which he expressed his belief that he had no chance to succeed in these appeals and seemed to state his desire to dismiss them. The letter, however, did not comply with the requirements for a motion to dismiss a criminal appeal. *See* Tex. R. App. P. 42.2(a). Thus, assuming that appellant intended for his letter to serve as a motion to dismiss, we deny the motion.

[4]To protect the identity of the people associated with appellant's acts described in this opinion, we will refer to them through pseudonyms.

penetrating her sexual organ. Appellant retained counsel and filed pretrial motions, including a request for notice of the State's intention to use evidence of extraneous offenses at trial and a written objection to the admissibility of extraneous offenses. The trial court consolidated appellant's cases for a single trial. Appellant received written and oral admonishments about the effects of pleading guilty, waived his constitutional and statutory rights, judicially confessed to both offenses, and entered open guilty pleas to both of them. The trial court accepted appellant's pleas, ordered the completion of a presentence investigation report, and appointed a licensed sex offender treatment provider to evaluate appellant.

After recessing appellant's cases awhile, the trial court heard evidence from a forensic computer examiner, Russell Stephens, about images and information that Stephens had found on computers and an external hard drive. Stephens testified that he found pictures associated with Kori's MySpace account and pictures depicting bestiality. The trial court recessed appellant's cases for two more weeks, and then the trial court held a hearing on, among other matters, the possible withdrawal of appellant's guilty pleas. At that hearing, however, the following exchange occurred:

> [DEFENSE COUNSEL]: Well, I want to state something for the record, that as a result of some conversations I had with [appellant], I began to question whether or not he was intending on withdrawing his plea on both cases.

4

Now that we've had time to visit here today, and we've been in the courtroom, it's my understanding, from [appellant], that he wishes to go forward with the guilty plea on both cases. . . .

. . . .

. . . [A]t this point, . . . you are not asking this Court to allow you to withdraw your plea on both of these cases?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: And you're going to continue with your plea of guilty to both cases?

THE DEFENDANT: Yes.

. . . .

THE COURT: And the next question is: Are you going to continue, not only with your plea of guilty, but to permit the Court to sentence you after finishing the hearing?

THE DEFENDANT: Yes.

Based upon appellant's statements and upon findings that appellant had been properly admonished, that his pleas were voluntary, and that the trial court had already taken appellant's cases under advisement,[5] the trial court denied any attempt by appellant to withdraw his pleas.

After again recessing appellant's cases, the trial court heard more evidence about acts that appellant had committed. For example, Kori testified that after appellant was indicted for soliciting and sexually assaulting her, he

---

[5]*See Mendez v. State*, 138 S.W.3d 334, 345 (Tex. Crim. App. 2004) ("[W]hen trial by jury has been waived, the defendant may change the plea from guilty to not guilty until the court pronounces judgment or takes the case under advisement.").

5

communicated with her on the internet while using a different name, and because she believed that he was someone else, she sent him a photograph in which she was holding her breasts. Two other women testified that they each became acquainted with appellant on the internet, that they each had sex with him, and that he asked each of them if they could arrange for him to have sex with an underage girl.

Another witness, Brianna, testified that in 2009, when she was fourteen years old, she began communicating with appellant, who said that he was seventeen years old, on the internet.[6] Brianna said that she sent appellant nude pictures of herself. According to Brianna, appellant asked to meet her in person to have sex, said that he was going to rape her, and told her that he preferred to have sex with young girls. Brianna testified that she sneaked out of her house to meet appellant in person one early morning in July 2009. After she got in his car and followed his command to pull her shorts and underwear down, he had sex with her. Later, appellant told Brianna that he wanted to have sex with her younger sister. Brianna testified that a couple of days after she and appellant had sex the first time, they had sex again. Brianna eventually told the police about her relationship with appellant. Johnson County Sheriff's Office Detective Brian Peterson investigated Brianna's allegations. When officers executed a search warrant at appellant's house, they knocked at the house for several

---

[6]Appellant was born in July 1986, so he was approximately twenty-three years old in 2009.

minutes without a response before forcing entry into the home. Upon entry, the officers located appellant and found wet cell phones, which led Detective Peterson to believe that appellant was trying to prevent officers from retrieving evidence from the phones. The officers also found the computers that Stephens later analyzed. Appellant's criminal case concerning Brianna was still pending at the time of the trial of Kori's case.

Another witness, Heather, told the trial court that when she was approximately fourteen years old and was living in Florida, appellant offered to pay her money or with cigarettes for sex. Appellant was approximately twenty years old when he asked Heather for sex. They eventually had sex.

Next, Brandi, who was twenty-one years old at the time of her testimony, stated that in 2004, when she was fourteen years old and appellant was eighteen years old and was a senior at her high school, appellant picked her up from the school and had sex with her at his house. A police officer asked appellant about having sex with Brandi, and he gave a statement in which he admitted having sexual contact with her but stated that he did not realize how young she was.

Another witness, Kyra stated that in the summer of 2006, when she was fifteen years old and appellant was nineteen years old, she went to appellant's house. Other people were also at the house and were drinking alcohol. Kyra, who had drunk alcohol before, drank half of a glass of red wine, began feeling

tired, and was not able to completely comprehend what was happening to her.[7] Eventually, appellant, without Kyra's consent, had sex with her in his bedroom. Kyra's sister and parents learned what had happened, and Kyra's parents called the police. A criminal case regarding appellant's having sex with Kyra was still pending at the time of Kyra's testimony in the cases concerning Kori.

Kelsey, another female who became acquainted with appellant through the internet, testified that after she met him in person but before she had sex with him, he asked her if she had any young friends, which she thought was "weird." Kelsey assumed that appellant meant that he wanted her to find younger girls that he could have sex with.

Becky, who met appellant on the internet and was appellant's girlfriend for almost a year, testified that while she dated appellant, he lied to her about his education, his criminal history, and his interaction with Kori. Becky stated that while she was living with appellant, he bought a fake identification of Kori and stated that he was going to give that identification to his attorney to use in defense of the crimes involving her. Becky also testified, among many other facts, that appellant stated that he "wanted to get everybody pregnant."

Next, Douglas testified that he met appellant on the internet through a "[m]en [s]eeking [m]en" advertisement. According to Douglas, appellant went to Douglas's home for a sexual encounter but later changed his mind and said that

---

[7]At trial, Kyra opined that something might have been put into the wine.

he had to leave. Before leaving, however, appellant asked Douglas if he knew of any "girls that might be interested in coming over." Douglas also had a telephone conversation with appellant in which appellant expressed his desire to have sex with young girls. When Douglas sent a text message to appellant that falsely stated that Douglas had two young girls at his house, appellant went to the house and asked where the girls were. Appellant became angry after realizing that the girls were not there, and he told Douglas that Douglas "could have had anything [he] wanted if [he would have had] girls there." Douglas eventually reported appellant's statements to the police.

Ezio Leite, who has treated numerous sex offenders, conducted a psychosexual assessment of appellant. Leite testified that appellant described his offense against Kori much differently than the description of facts within an offense report and within the presentence investigation report. Leite also stated that appellant was defensive, which suggested to Leite that there was "more about [appellant], his personality, his behaviors, [and] his sexuality than he was willing to give [Leite]." When Leite was asked what program he could tailor for appellant if the trial court placed appellant on community supervision, he responded, "Counsel, that remains to be seen. Because as of now, I don't have much to go with. . . . Because all I got [was] defensiveness." Leite opined that based on various facts that had been presented to the trial court, appellant had a risk to reoffend. Leite said, however, that he had treated clients with profiles

9

similar to appellant's profile and that some of those clients had successfully completed the sex offender program.

After the State rested, appellant called several witnesses, including his father, his mother, and one of his brothers, in an effort to persuade the trial court to defer its adjudication of his guilt and to place him on community supervision. The trial court found appellant guilty of both offenses and sentenced him to twenty years' confinement for his online solicitation offense and to confinement for life for aggravated sexual assault of a child. The court ordered the sentences to run concurrently. After the court denied appellant's request for a new trial, he brought these appeals.

### The Withdrawal of Appellant's Guilty Pleas

In his first point, appellant argues that the trial court erred by refusing to withdraw his guilty pleas on his motion or on the court's own motion. Appellant contends that he had a "right to withdraw his guilty plea[s] because the trial court had not found him Guilty and was hearing evidence as to whether to accept the Guilty pleas and impose sentence." But even if appellant had the right to withdraw his pleas, he did not seek to do so. Instead, as shown above, he unequivocally expressed to the trial court (and apparently also to his trial counsel) that he did not desire to withdraw the pleas but that he instead wanted to maintain them and to allow the court to assess his punishment. Appellant has not directed us to any part of the record showing that he subsequently sought to withdraw the pleas. Thus, the trial court was not required to withdraw the pleas.

10

*See id.* at 350 ("It is reasonable to put on . . . a defendant the requirement of timely seeking, in one way or another, to withdraw the plea of guilty. The [defendant] not having done so, he may not complain for the first time on appeal that the trial court did not do it for him."); *Salinas v. State*, 282 S.W.3d 923, 924 (Tex. App.—Fort Worth 2009, pet. ref'd) ("Appellant did not ask to withdraw his plea, even though he testified that he did not commit the offense as described in the indictment. We hold, therefore, that Appellant has forfeited his complaint by failing to raise the issue before the trial court."); *Ingram v. State*, Nos. 02-06-00276-CR, 02-06-00277-CR, 02-06-00278-CR, 2007 WL 1299230, at *1 (Tex. App.—Fort Worth May 3, 2007, pet. ref'd) (mem. op., not designated for publication) ("It is well settled that a defendant has the duty to timely withdraw his guilty plea and may not complain for the first time on appeal that the trial court failed to withdraw the plea for him."). We overrule appellant's first point.

**The Admission of Various Exhibits**

In his second point, appellant argues that the trial court abused its discretion by admitting State's Exhibits One through Four and State's Exhibit Eleven. State's Exhibits One through Three are photographs of the computer equipment seized from appellant's residence. When the State offered those exhibits, appellant's counsel stated that he did not object to their admission.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request,

11

objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez*, 138 S.W.3d at 341. A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g). Because appellant stated that he did not object to the admission of State's Exhibits One through Three, we hold that he forfeited his appellate complaint about the admission of those exhibits.

State's Exhibit Four is a compact disc containing the report generated by Stephens's forensic examination of the computer equipment seized from appellant's residence. Stephens was the trial's first witness, so when he testified about State's Exhibit Four, the State had not presented evidence connecting the computer equipment that he examined to appellant. When the State offered the exhibit, appellant's counsel stated,

> Judge -- as far as any objection is concerned, I understand he's testifying as to what he took off of a computer, and that is these records. But as far as the content, I mean, at a later date, we may have some objections to the relevance of these documents. There's been nothing tied up to [appellant], at this point.

In response to this statement, the State asked that the exhibit be admitted "subject to tying [it] to the defendant." After further discussion, appellant's counsel said,

12

The objection is, at this point, that . . . there's been no proper predicate, and it's not relevant to Mr. Cooper. But I understand that, knowing this DA's office as I do, . . . if they tell me they're going to bring people in here that they're going to try to link that computer to my client, then I would believe that that's what they're going to try to do.

So, . . . if you want to admit it conditionally on that point, that's fine with me, at this point.

As appellant's counsel suggested, the trial court conditionally admitted the exhibit.

When the relevancy of evidence "depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Tex. R. Evid. 104(b). In *Powell v. State*, the court of criminal appeals explained the doctrine of conditional relevancy, stating,

> [A] trial judge may admit evidence that lacks authentication on the condition that the party offering the evidence authenticate it, or "connect it up," at a later time. If sufficient "connecting" evidence does not appear by the close of the proponent's evidence, the opposing party must renew his original objection by a motion to strike the conditionally admitted evidence. Failure to do so constitutes waiver by the opposing party for purposes of appeal.

898 S.W.2d 821, 829 (Tex. Crim. App. 1994) (citations omitted), *cert. denied*, 516 U.S. 991 (1995); *see also Williams v. State*, 82 S.W.3d 557, 563–64 (Tex. App.—San Antonio 2002, pet. ref'd) (citing and applying the preservation rule expressed in *Powell*).

Appellant does not direct us to any part of the record in which he renewed his original objection to the conditionally admitted evidence and moved to strike

13

it.  Thus, under the precedent of *Powell*, we are compelled to hold that appellant forfeited his objection to the admission of State's Exhibit Four.

Finally, State's Exhibit Eleven was a folder that officers found upon searching appellant's residence.  The folder contained, among other things, photographs and internet printouts.  When the State offered Exhibit Eleven for admission, appellant's counsel initially twice stated that appellant had no objection.  Appellant's counsel then stated, "Judge, we would make one legal objection, that these documents were seized without a legal search warrant." The trial court deferred ruling on the admissibility of the exhibit until the court could review the warrant.  The next day, the State again sought admission of the exhibit, and appellant's counsel urged that the search warrant that the State had presented did not authorize seizure of the folder.  After listening to arguments from the parties, the trial court overruled appellant's objection and admitted the exhibit.

In his brief, appellant does not argue that State's Exhibit Eleven should have been excluded because a warrant did not authorize its seizure; instead, appellant appears to argue that it should have been excluded because the State did not connect the exhibit to him.  "[I]t is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial." *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *see Lemasurier v. State*, 91 S.W.3d 897, 902 (Tex. App.—Fort Worth 2002, pet. ref'd) ("[A]n objection preserves only the specific ground cited. . . .  Therefore, if counsel objects on an

14

incorrect ground at trial and is overruled, but later cites the correct ground to the appellate court, error is not preserved."). Because appellant's objection at trial to the admissibility of Exhibit Eleven does not match his complaint on appeal, we hold that he forfeited his complaint.

We overrule appellant's second point.

**Extraneous Offense Notice**

In his third point, appellant contends that the trial court abused its discretion by allowing Heather to testify that she had sex with him because he did not properly receive notice of that extraneous allegation. Heather testified twice in appellant's trial. In her initial testimony, she stated that when she was fourteen or fifteen years old and was living in Florida, her sister and appellant visited. Heather said that during that visit, appellant asked her for sex. In her initial testimony, Heather was not asked, and did not disclose, whether she had actually had sex with appellant. More than a month after Heather first testified, the State recalled her so that she could testify that she had sex with appellant, and the following exchange occurred:

> [THE STATE]. . . . [D]o you recall testifying here . . . about a month ago?
>
> A. Yes, ma'am.
>
> . . . .
>
> Q. Okay. And shortly before you entered the courtroom, you and I were speaking in the conference room; is that correct?
>
> A. Yes, ma'am.

15

Q. Okay. And did you tell me something for the first time during that conversation?

A. Yes, ma'am.

Q. And what was that?

. . . .

[DEFENSE COUNSEL]: Judge, I'm going to object on the notice situation, that we didn't get . . . adequate notice of any additional uncharged misconduct or bad acts.

THE COURT: So on what date again? . . .

[THE STATE]: I believe she testified on the 4th of August.

THE COURT: And she told you something additionally, immediately, or soon after testifying?

[THE STATE]: Yes. And as soon as that information was revealed, [defense counsel] and I had a conference . . . about that --

THE COURT: That same day or a few days after?

[THE STATE]: That moment that it happened, within minutes of me finding out that information. And then on . . . Thursday or Friday of last week, I provided written notice that I intended to bring that information up today.

THE COURT: Is that, essentially, correct, [defense counsel]?

[DEFENSE COUNSEL]: That's correct, Your Honor.

THE COURT: Okay. Your objection's overruled.

After the trial court overruled appellant's objection, Heather testified that she had once had sex with appellant.

Appellant's objection in the trial court and his argument on appeal indicate that he challenges the timing of the notice that he received about Heather's allegation of having sex with him rather than the manner or specificity of the

16

notice. We review a trial court's admission of an extraneous offense on the basis that a defendant received sufficient notice of it for an abuse of discretion. *Hayden v. State*, 66 S.W.3d 269, 271 (Tex. Crim. App. 2001); *Burks v. State*, 227 S.W.3d 138, 147 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). A trial court abuses its discretion by acting outside the zone of reasonable disagreement. *Lozano v. State*, 359 S.W.3d 790, 817 (Tex. App.—Fort Worth 2012, pet. ref'd).

In determining the proper sentence for a defendant who has pled guilty, a trial court may consider any matter that the court deems relevant to sentencing, including extraneous crimes or bad acts that are proved beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2012); *see also Carroll v. State*, 975 S.W.2d 630, 631–32 (Tex. Crim. App. 1998) (holding that when a defendant pleads guilty in front of a trial court, the court conducts a unitary trial in which parties introduce evidence to enable the court to "intelligently . . . exercise discretion in the assessment of punishment"). On the timely request of the defendant, reasonable notice of intent to introduce such extraneous crimes or bad acts must be given. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g); Tex. R. Evid. 404(b). The purpose of the notice requirement is to guard against surprise. *Worthy v. State*, 312 S.W.3d 34, 38 (Tex. Crim. App. 2010). The reasonableness of notice "turns on the facts and circumstances of each individual case." *Patton v. State*, 25 S.W.3d 387, 392 (Tex. App.—Austin 2000, pet. ref'd).

The record establishes that appellant sought notice of the State's intent to use extraneous offenses and that the State gave it. The parties agreed at trial that the prosecutor met with appellant's counsel minutes after learning of Heather's claim about having sex with appellant and that the prosecutor later gave written notice of the State's intent to use that evidence. Over a month passed from the time that appellant's counsel learned of Heather's claim about having sex with appellant until Heather testified about that claim. Under these circumstances, we cannot hold that the trial court abused its discretion by overruling appellant's objection to the evidence and by implicitly determining that appellant received adequate notice. *See Henderson v. State*, 29 S.W.3d 616, 625 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that notice given immediately upon discovering new evidence was reasonable when given eight days before the evidence was introduced); *Patton*, 25 S.W.3d at 392–93 (holding similarly when the State delivered notice two days before trial began); *see also West v. State*, No. 03-05-00371-CR, 2008 WL 4899189, at *6 (Tex. App.—Austin Nov. 14, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that the trial court did not abuse its discretion by admitting evidence of an extraneous act when the State provided notice to defense counsel upon learning of an extraneous offense five days before trial).

Moreover, even if we were to conclude that the trial court abused its discretion by allowing Heather's second testimony, we would be required to determine whether that nonconstitutional error affected appellant's substantial

18

rights. *See* Tex. R. App. P. 44.2(b); *Pittman v. State*, 321 S.W.3d 565, 572 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that the improper admission of an extraneous offense is nonconstitutional error). Appellant does not challenge the admissibility of Heather's initial testimony that appellant asked her for sex when she was a minor and offered to pay for it; he attacks only her testimony that they actually had sex. But the record includes significant evidence, apart from Heather's testimony, of appellant actually having sex with underage girls and desiring to have sex with others. Heather's second testimony was cumulative of this other substantial evidence. Thus, we would not be able to conclude that the admission of Heather's second testimony likely influenced the trial court's judgment or affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (explaining that in making the determination of harm, we consider the character of the alleged error and how it might be considered in connection with other evidence in the case).

For all of these reasons, we overrule appellant's third point.

### The Trial Court's Alleged Failure to Issue a Writ of Attachment

In his fourth point, appellant contends that the trial court abused its discretion by failing to issue a writ of attachment for Audrey, Heather's sister, so that appellant could procure testimony from her.[8] During the last day of the trial,

---

[8]A writ of attachment commands "some peace officer to take the body of a witness and bring him before [a] court, magistrate or grand jury on a day named, or forthwith, to testify in behalf of the State or of the defendant, as the case may be." Tex. Code Crim. Proc. Ann. art. 24.11 (West 2009).

19

appellant's counsel announced that the defense had served Audrey with a subpoena at her place of employment, that she had torn the subpoena, and that the defense would be making a "decision . . . about what [they] want[ed] to do." The trial court indicated that it would be willing to grant a writ of attachment to ensure that Audrey would testify. Later that same day, however, the following colloquy occurred:

> [DEFENSE COUNSEL]: [Appellant], I wanted to ask you, you know that we spent a lot of time and effort to find [Audrey] . . . . And finally, we were able to have her served last night, but she didn't show up this morning.
>
> There are means by which we can file a Writ of Attachment and have the Sheriff's Department . . . go and find her and bring her to court. . . . And you've . . . instructed me not to go forward with that Writ of Attachment because you do not want her called; is that correct?
>
> THE DEFENDANT: Yes. And I would -- I also just want to finish this up.
>
> [DEFENSE COUNSEL]: I just want to ask you, that's your decision not to go forward with the writ, and not to have her brought up here . . . . You've told me not to go forward with that; is that correct?
>
> THE DEFENDANT: Yes. That is correct.

Appellant contends in his brief that he was "denied [Audrey's] important testimony at his trial," but the record shows that he decided that he did not want her to testify. To preserve error when a subpoenaed witness does not appear, a defendant must show that he requested a writ of attachment, that the trial court denied that request, and that the missing witness would have testified to specific

20

facts that were relevant and material. *Sturgeon v. State*, 106 S.W.3d 81, 85 (Tex. Crim. App. 2003). Because appellant withdrew his request for a writ of attachment and because the trial court did not deny any request for such a writ, we hold that appellant forfeited the complaint stated in his fourth point, and we overrule that point.[9]

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgments.

PER CURIAM

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 21, 2012

---

[9]In his discussion of his fourth point, appellant asserts that his federal and state constitutional rights to compulsory process were violated because the trial court did not compel Audrey to attend his trial. Appellant likewise forfeited this argument because he did not raise it in the trial court. *See* Tex. R. App. P. 33.1(a)(1); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009).