02-11-537, 538-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00538-CR

 

 


 
 
 Johnathan
 Eugene Cooper
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 43rd District Court
  
 of
 Parker County (CR09-0662)
  
 November
 21, 2012
  
 Per
 Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

PER
CURIAM

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00537-CR

NO. 02-11-00538-CR

 

 


 
 
 Johnathan Eugene Cooper
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 43rd
District Court OF Parker COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
four points, appellant Johnathan Eugene Cooper appeals his convictions for
online solicitation of a minor, which is a second-degree felony under the
circumstances of this case, and aggravated sexual assault of a child, which is
a first-degree felony.[2]  We affirm.[3]

                                                Background
Facts

          Kori[4]
was thirteen years old when she contacted appellant through the internet.  Appellant
told her that he was a doctor.  Kori invited appellant to her house, and appellant
picked her up in his car one early morning in October 2008, when appellant was
twenty-two years old.  While knowing that Kori was thirteen years old, appellant
had sex with her, and although Kori asked him to stop, he did not.  Appellant
did not wear a condom while having sex with Kori, and he told her that he was
“going to make [her] have a baby.”  Kori got dressed, and appellant drove her
home.  Appellant later told Kori that he had once had sex with an
eleven-year-old child and that he wanted Kori to bring a six-year-old girl to
have sex with him.  Kori told her mother and the police about what had
occurred.  The police received the pajama pants that Kori had worn on the night
that she had sex with appellant.  A forensic examination of those pants
revealed the presence of appellant’s semen.

          A
grand jury indicted appellant for online solicitation of a minor and for
aggravated sexual assault of a child younger than fourteen years old by
penetrating her sexual organ.  Appellant retained counsel and filed pretrial
motions, including a request for notice of the State’s intention to use
evidence of extraneous offenses at trial and a written objection to the
admissibility of extraneous offenses.  The trial court consolidated appellant’s
cases for a single trial.  Appellant received written and oral admonishments
about the effects of pleading guilty, waived his constitutional and statutory
rights, judicially confessed to both offenses, and entered open guilty pleas to
both of them.  The trial court accepted appellant’s pleas, ordered the
completion of a presentence investigation report, and appointed a licensed sex
offender treatment provider to evaluate appellant.

          After
recessing appellant’s cases awhile, the trial court heard evidence from a
forensic computer examiner, Russell Stephens, about images and information that
Stephens had found on computers and an external hard drive.  Stephens testified
that he found pictures associated with Kori’s MySpace account and pictures
depicting bestiality.  The trial court recessed appellant’s cases for two more
weeks, and then the trial court held a hearing on, among other matters, the
possible withdrawal of appellant’s guilty pleas.  At that hearing, however, the
following exchange occurred:

          [DEFENSE COUNSEL]:  Well, I want to state
something for the record, that as a result of some conversations I had with
[appellant], I began to question whether or not he was intending on withdrawing
his plea on both cases.

          Now that we’ve had time to visit here today,
and we’ve been in the courtroom, it’s my understanding, from [appellant], that
he wishes to go forward with the guilty plea on both cases. . . .

          . . . .

          . . .  [A]t this point, . . . you
are not asking this Court to allow you to withdraw your plea on both of these
cases?

          THE DEFENDANT:  Yes.

          [DEFENSE COUNSEL]:  And you’re going to
continue with your plea of guilty to both cases?

          THE DEFENDANT:  Yes.

          . . . .

          THE COURT:  And the next question is:  Are you
going to continue, not only with your plea of guilty, but to permit the Court
to sentence you after finishing the hearing?

          THE DEFENDANT:  Yes.

Based
upon appellant’s statements and upon findings that appellant had been properly
admonished, that his pleas were voluntary, and that the trial court had already
taken appellant’s cases under advisement,[5] the trial court denied
any attempt by appellant to withdraw his pleas.

          After
again recessing appellant’s cases, the trial court heard more evidence about
acts that appellant had committed.  For example, Kori testified that after
appellant was indicted for soliciting and sexually assaulting her, he communicated
with her on the internet while using a different name, and because she believed
that he was someone else, she sent him a photograph in which she was holding
her breasts.  Two other women testified that they each became acquainted with
appellant on the internet, that they each had sex with him, and that he asked each
of them if they could arrange for him to have sex with an underage girl.

          Another
witness, Brianna, testified that in 2009, when she was fourteen years old, she
began communicating with appellant, who said that he was seventeen years old,
on the internet.[6]  Brianna said that she sent
appellant nude pictures of herself.  According to Brianna, appellant asked to
meet her in person to have sex, said that he was going to rape her, and told
her that he preferred to have sex with young girls.  Brianna testified that she
sneaked out of her house to meet appellant in person one early morning in July
2009.  After she got in his car and followed his command to pull her shorts and
underwear down, he had sex with her.  Later, appellant told Brianna that he
wanted to have sex with her younger sister.  Brianna testified that a couple of
days after she and appellant had sex the first time, they had sex again.  Brianna
eventually told the police about her relationship with appellant.  Johnson
County Sheriff’s Office Detective Brian Peterson investigated Brianna’s
allegations.  When officers executed a search warrant at appellant’s house,
they knocked at the house for several minutes without a response before forcing
entry into the home.  Upon entry, the officers located appellant and found wet
cell phones, which led Detective Peterson to believe that appellant was trying
to prevent officers from retrieving evidence from the phones.  The officers
also found the computers that Stephens later analyzed.  Appellant’s criminal
case concerning Brianna was still pending at the time of the trial of Kori’s
case.

          Another
witness, Heather, told the trial court that when she was approximately fourteen
years old and was living in Florida, appellant offered to pay her money or with
cigarettes for sex.  Appellant was approximately twenty years old when he asked
Heather for sex.  They eventually had sex.

          Next,
Brandi, who was twenty-one years old at the time of her testimony, stated that
in 2004, when she was fourteen years old and appellant was eighteen years old
and was a senior at her high school, appellant picked her up from the school
and had sex with her at his house.  A police officer asked appellant about
having sex with Brandi, and he gave a statement in which he admitted having
sexual contact with her but stated that he did not realize how young she was.

          Another
witness, Kyra stated that in the summer of 2006, when she was fifteen years old
and appellant was nineteen years old, she went to appellant’s house.  Other
people were also at the house and were drinking alcohol.  Kyra, who had drunk
alcohol before, drank half of a glass of red wine, began feeling tired, and was
not able to completely comprehend what was happening to her.[7] 
Eventually, appellant, without Kyra’s consent, had sex with her in his
bedroom.  Kyra’s sister and parents learned what had happened, and Kyra’s
parents called the police.  A criminal case regarding appellant’s having sex
with Kyra was still pending at the time of Kyra’s testimony in the cases
concerning Kori.

          Kelsey,
another female who became acquainted with appellant through the internet,
testified that after she met him in person but before she had sex with him, he
asked her if she had any young friends, which she thought was “weird.”  Kelsey
assumed that appellant meant that he wanted her to find younger girls that he
could have sex with.

          Becky,
who met appellant on the internet and was appellant’s girlfriend for almost a
year, testified that while she dated appellant, he lied to her about his education,
his criminal history, and his interaction with Kori.  Becky stated that while
she was living with appellant, he bought a fake identification of Kori and stated
that he was going to give that identification to his attorney to use in defense
of the crimes involving her.  Becky also testified, among many other facts,
that appellant stated that he “wanted to get everybody pregnant.”

          Next,
Douglas testified that he met appellant on the internet through a “[m]en [s]eeking
[m]en” advertisement.  According to Douglas, appellant went to Douglas’s home
for a sexual encounter but later changed his mind and said that he had to
leave.  Before leaving, however, appellant asked Douglas if he knew of any
“girls that might be interested in coming over.”  Douglas also had a telephone
conversation with appellant in which appellant expressed his desire to have sex
with young girls.  When Douglas sent a text message to appellant that falsely
stated that Douglas had two young girls at his house, appellant went to the
house and asked where the girls were.  Appellant became angry after realizing
that the girls were not there, and he told Douglas that Douglas “could have had
anything [he] wanted if [he would have had] girls there.”  Douglas eventually
reported appellant’s statements to the police.

          Ezio
Leite, who has treated numerous sex offenders, conducted a psychosexual
assessment of appellant.  Leite testified that appellant described his offense
against Kori much differently than the description of facts within an offense
report and within the presentence investigation report.  Leite also stated that
appellant was defensive, which suggested to Leite that there was “more about
[appellant], his personality, his behaviors, [and] his sexuality than he was
willing to give [Leite].”  When Leite was asked what program he could tailor
for appellant if the trial court placed appellant on community supervision, he
responded, “Counsel, that remains to be seen.  Because as of now, I don’t have
much to go with. . . .  Because all I got [was] defensiveness.” 
Leite opined that based on various facts that had been presented to the trial
court, appellant had a risk to reoffend.  Leite said, however, that he had
treated clients with profiles similar to appellant’s profile and that some of
those clients had successfully completed the sex offender program.

          After
the State rested, appellant called several witnesses, including his father, his
mother, and one of his brothers, in an effort to persuade the trial court to
defer its adjudication of his guilt and to place him on community supervision. 
The trial court found appellant guilty of both offenses and sentenced him to
twenty years’ confinement for his online solicitation offense and to confinement
for life for aggravated sexual assault of a child.  The court ordered the
sentences to run concurrently.  After the court denied appellant’s request for
a new trial, he brought these appeals.

The Withdrawal
of Appellant’s Guilty Pleas

          In
his first point, appellant argues that the trial court erred by refusing to
withdraw his guilty pleas on his motion or on the court’s own motion.  Appellant
contends that he had a “right to withdraw his guilty plea[s] because the trial
court had not found him Guilty and was hearing evidence as to whether to accept
the Guilty pleas and impose sentence.”  But even if appellant had the right to
withdraw his pleas, he did not seek to do so.  Instead, as shown above, he unequivocally
expressed to the trial court (and apparently also to his trial counsel) that he
did not desire to withdraw the pleas but that he instead wanted to maintain
them and to allow the court to assess his punishment.  Appellant has not
directed us to any part of the record showing that he subsequently sought to
withdraw the pleas.  Thus, the trial court was not required to withdraw the
pleas.  See id. at 350 (“It is reasonable to put on . . . a
defendant the requirement of timely seeking, in one way or another, to withdraw
the plea of guilty.  The [defendant] not having done so, he may not complain
for the first time on appeal that the trial court did not do it for him.”); Salinas
v. State, 282 S.W.3d 923, 924 (Tex. App.—Fort Worth 2009, pet. ref’d) (“Appellant
did not ask to withdraw his plea, even though he testified that he did not
commit the offense as described in the indictment.  We hold, therefore, that
Appellant has forfeited his complaint by failing to raise the issue before the
trial court.”); Ingram v. State, Nos. 02-06-00276-CR, 02-06-00277-CR, 02-06-00278-CR,
2007 WL 1299230, at *1 (Tex. App.—Fort Worth May 3, 2007, pet. ref’d) (mem.
op., not designated for publication) (“It is well settled that a defendant has
the duty to timely withdraw his guilty plea and may not complain for the first
time on appeal that the trial court failed to withdraw the plea for him.”).  We
overrule appellant’s first point.

The
Admission of Various Exhibits

          In
his second point, appellant argues that the trial court abused its discretion
by admitting State’s Exhibits One through Four and State’s Exhibit Eleven.  State’s
Exhibits One through Three are photographs of the computer equipment seized
from appellant’s residence.  When the State offered those exhibits, appellant’s
counsel stated that he did not object to their admission.

          To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State,
319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez, 138 S.W.3d at 341. 
A reviewing court should not address the merits of an issue that has not been
preserved for appeal.  Wilson v. State, 311 S.W.3d 452, 473 (Tex. Crim.
App. 2010) (op. on reh’g).  Because appellant stated that he did not object to
the admission of State’s Exhibits One through Three, we hold that he forfeited
his appellate complaint about the admission of those exhibits.

          State’s
Exhibit Four is a compact disc containing the report generated by Stephens’s forensic
examination of the computer equipment seized from appellant’s residence.  Stephens
was the trial’s first witness, so when he testified about State’s Exhibit Four,
the State had not presented evidence connecting the computer equipment that he
examined to appellant.  When the State offered the exhibit, appellant’s counsel
stated,

Judge -- as far as any objection is concerned, I
understand he’s testifying as to what he took off of a computer, and that is
these records.  But as far as the content, I mean, at a later date, we may have
some objections to the relevance of these documents.  There’s been nothing tied
up to [appellant], at this point.

In
response to this statement, the State asked that the exhibit be admitted
“subject to tying [it] to the defendant.”  After further discussion,
appellant’s counsel said,

The objection is, at this point, that . . . there’s
been no proper predicate, and it’s not relevant to Mr. Cooper.  But I understand
that, knowing this DA’s office as I do, . . . if they tell
me they’re going to bring people in here that they’re going to try to link that
computer to my client, then I would believe that that’s what they’re going to
try to do.

          So, . . . if you want to
admit it conditionally on that point, that’s fine with me, at this point.

As
appellant’s counsel suggested, the trial court conditionally admitted the
exhibit.

          When
the relevancy of evidence “depends upon the fulfillment of a condition of fact,
the court shall admit it upon, or subject to the introduction of evidence
sufficient to support a finding of the fulfillment of the condition.”  Tex. R.
Evid. 104(b).  In Powell v. State, the court of criminal appeals
explained the doctrine of conditional relevancy, stating,

[A] trial judge may admit evidence that lacks
authentication on the condition that the party offering the evidence
authenticate it, or “connect it up,” at a later time.  If sufficient
“connecting” evidence does not appear by the close of the proponent’s evidence,
the opposing party must renew his original objection by a motion to strike the
conditionally admitted evidence.  Failure to do so constitutes waiver by the
opposing party for purposes of appeal.

898
S.W.2d 821, 829 (Tex. Crim. App. 1994) (citations omitted), cert. denied,
516 U.S. 991 (1995); see also Williams v. State, 82 S.W.3d 557, 563–64
(Tex. App.—San Antonio 2002, pet. ref’d) (citing and applying the preservation
rule expressed in Powell).

          Appellant
does not direct us to any part of the record in which he renewed his original
objection to the conditionally admitted evidence and moved to strike it.  Thus,
under the precedent of Powell, we are compelled to hold that appellant
forfeited his objection to the admission of State’s Exhibit Four.

          Finally,
State’s Exhibit Eleven was a folder that officers found upon searching
appellant’s residence.  The folder contained, among other things, photographs
and internet printouts.  When the State offered Exhibit Eleven for admission,
appellant’s counsel initially twice stated that appellant had no objection.  Appellant’s
counsel then stated, “Judge, we would make one legal objection, that these
documents were seized without a legal search warrant.”  The trial court
deferred ruling on the admissibility of the exhibit until the court could
review the warrant.  The next day, the State again sought admission of the
exhibit, and appellant’s counsel urged that the search warrant that the State
had presented did not authorize seizure of the folder.  After listening to
arguments from the parties, the trial court overruled appellant’s objection and
admitted the exhibit.

          In
his brief, appellant does not argue that State’s Exhibit Eleven should have
been excluded because a warrant did not authorize its seizure; instead,
appellant appears to argue that it should have been excluded because the State
did not connect the exhibit to him.  “[I]t is well settled that the legal basis
of a complaint raised on appeal cannot vary from that raised at trial.” Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); see Lemasurier v.
State, 91 S.W.3d 897, 902 (Tex. App.—Fort Worth 2002, pet. ref’d) (“[A]n
objection preserves only the specific ground cited. . . .  Therefore,
if counsel objects on an incorrect ground at trial and is overruled, but later
cites the correct ground to the appellate court, error is not preserved.”). 
Because appellant’s objection at trial to the admissibility of Exhibit Eleven
does not match his complaint on appeal, we hold that he forfeited his
complaint.

          We
overrule appellant’s second point.

Extraneous
Offense Notice

          In
his third point, appellant contends that the trial court abused its discretion
by allowing Heather to testify that she had sex with him because he did not
properly receive notice of that extraneous allegation.  Heather testified twice
in appellant’s trial.  In her initial testimony, she stated that when she was
fourteen or fifteen years old and was living in Florida, her sister and
appellant visited.  Heather said that during that visit, appellant asked her
for sex.  In her initial testimony, Heather was not asked, and did not disclose,
whether she had actually had sex with appellant.  More than a month after Heather
first testified, the State recalled her so that she could testify that she had
sex with appellant, and the following exchange occurred:

          [THE STATE].  . . . [D]o you recall
testifying here . . . about a month ago?

          A.  Yes, ma’am.

          . . . .

          Q.  Okay.  And shortly before you entered the
courtroom, you and I were speaking in the conference room; is that correct?

          A.  Yes, ma’am.

          Q.  Okay.  And did you tell me something for
the first time during that conversation?

          A.  Yes, ma’am.

          Q.  And what was that?

          . . . .

          [DEFENSE COUNSEL]:  Judge, I’m going to object on
the notice situation, that we didn’t get . . . adequate
notice of any additional uncharged misconduct or bad acts.

          THE COURT:  So on what date again? . . .

          [THE STATE]:  I believe she testified on the
4th of August.

          THE COURT:  And she told you something
additionally, immediately, or soon after testifying?

          [THE STATE]:  Yes.  And as soon as that
information was revealed, [defense counsel] and I had a conference . . . about
that --

          THE COURT:  That same day or a few days after?

          [THE STATE]:  That moment that it happened,
within minutes of me finding out that information.  And then on . . . Thursday
or Friday of last week, I provided written notice that I intended to bring that
information up today.

          THE COURT:  Is that, essentially, correct,
[defense counsel]?

          [DEFENSE COUNSEL]:  That’s correct, Your Honor.

          THE COURT:  Okay.  Your objection’s overruled.

After
the trial court overruled appellant’s objection, Heather testified that she had
once had sex with appellant.

          Appellant’s
objection in the trial court and his argument on appeal indicate that he
challenges the timing of the notice that he received about Heather’s allegation
of having sex with him rather than the manner or specificity of the notice.  We
review a trial court’s admission of an extraneous offense on the basis that a
defendant received sufficient notice of it for an abuse of discretion.  Hayden
v. State, 66 S.W.3d 269, 271 (Tex. Crim. App. 2001); Burks v. State,
227 S.W.3d 138, 147 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  A trial
court abuses its discretion by acting outside the zone of reasonable
disagreement.  Lozano v. State, 359 S.W.3d 790, 817 (Tex. App.—Fort
Worth 2012, pet. ref’d).

          In
determining the proper sentence for a defendant who has pled guilty, a trial
court may consider any matter that the court deems relevant to sentencing,
including extraneous crimes or bad acts that are proved beyond a reasonable
doubt.  See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2012);
see also Carroll v. State, 975 S.W.2d 630, 631–32 (Tex. Crim. App. 1998)
(holding that when a defendant pleads guilty in front of a trial court, the
court conducts a unitary trial in which parties introduce evidence to enable
the court to “intelligently . . . exercise discretion in
the assessment of punishment”).  On the timely request of the defendant,
reasonable notice of intent to introduce such extraneous crimes or bad acts
must be given.  See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g);
Tex. R. Evid. 404(b).  The purpose of the notice requirement is to guard
against surprise.  Worthy v. State, 312 S.W.3d 34, 38 (Tex. Crim. App.
2010).  The reasonableness of notice “turns on the facts and circumstances of
each individual case.”  Patton v. State, 25 S.W.3d 387, 392 (Tex. App.—Austin
2000, pet. ref’d).

          The
record establishes that appellant sought notice of the State’s intent to use
extraneous offenses and that the State gave it.  The parties agreed at trial
that the prosecutor met with appellant’s counsel minutes after learning of Heather’s
claim about having sex with appellant and that the prosecutor later gave
written notice of the State’s intent to use that evidence.  Over a month passed
from the time that appellant’s counsel learned of Heather’s claim about having
sex with appellant until Heather testified about that claim.  Under these
circumstances, we cannot hold that the trial court abused its discretion by
overruling appellant’s objection to the evidence and by implicitly determining
that appellant received adequate notice.  See Henderson v. State, 29
S.W.3d 616, 625 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d) (holding that
notice given immediately upon discovering new evidence was reasonable when
given eight days before the evidence was introduced); Patton, 25 S.W.3d at
392–93 (holding similarly when the State delivered notice two days before trial
began); see also West v. State, No. 03-05-00371-CR, 2008 WL 4899189, at
*6 (Tex. App.—Austin Nov. 14, 2008, pet. ref’d) (mem. op., not designated for
publication) (holding that the trial court did not abuse its discretion by
admitting evidence of an extraneous act when the State provided notice to
defense counsel upon learning of an extraneous offense five days before trial).

          Moreover,
even if we were to conclude that the trial court abused its discretion by
allowing Heather’s second testimony, we would be required to determine whether
that nonconstitutional error affected appellant’s substantial rights.  See
Tex. R. App. P. 44.2(b); Pittman v. State, 321 S.W.3d 565, 572 (Tex.
App.—Houston [14th Dist.] 2010, no pet.) (stating that the improper admission
of an extraneous offense is nonconstitutional error).  Appellant does not challenge
the admissibility of Heather’s initial testimony that appellant asked her for
sex when she was a minor and offered to pay for it; he attacks only her
testimony that they actually had sex.  But the record includes significant
evidence, apart from Heather’s testimony, of appellant actually having sex with
underage girls and desiring to have sex with others.  Heather’s second
testimony was cumulative of this other substantial evidence.  Thus, we would
not be able to conclude that the admission of Heather’s second testimony likely
influenced the trial court’s judgment or affected appellant’s substantial rights. 
See Tex. R. App. P. 44.2(b); Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002) (explaining that in making the determination of harm, we
consider the character of the alleged error and how it might be considered in
connection with other evidence in the case).

          For
all of these reasons, we overrule appellant’s third point.

The
Trial Court’s Alleged Failure to Issue a Writ of Attachment

          In
his fourth point, appellant contends that the trial court abused its discretion
by failing to issue a writ of attachment for Audrey, Heather’s sister, so that
appellant could procure testimony from her.[8]  During the last day of
the trial, appellant’s counsel announced that the defense had served Audrey
with a subpoena at her place of employment, that she had torn the subpoena, and
that the defense would be making a “decision . . . about
what [they] want[ed] to do.”  The trial court indicated that it would be
willing to grant a writ of attachment to ensure that Audrey would testify.  Later
that same day, however, the following colloquy occurred:

          [DEFENSE COUNSEL]:  [Appellant], I wanted to
ask you, you know that we spent a lot of time and effort to find [Audrey] . . . . 
And finally, we were able to have her served last night, but she didn’t show up
this morning.

          There are means by which we can file a Writ of
Attachment and have the Sheriff’s Department . . . go and
find her and bring her to court. . . .  And you’ve . . . instructed
me not to go forward with that Writ of Attachment because you do not want her called;
is that correct?

          THE DEFENDANT:  Yes.  And I would -- I also
just want to finish this up.

          [DEFENSE COUNSEL]:  I just want to ask you,
that’s your decision not to go forward with the writ, and not to have her
brought up here . . . .  You’ve told me not to go forward
with that; is that correct?

          THE DEFENDANT:  Yes.  That is correct.

          Appellant
contends in his brief that he was “denied [Audrey’s] important testimony at his
trial,” but the record shows that he decided that he did not want her to testify. 
To preserve error when a subpoenaed witness does not appear, a defendant must
show that he requested a writ of attachment, that the trial court denied that
request, and that the missing witness would have testified to specific facts
that were relevant and material.  Sturgeon v. State, 106 S.W.3d 81, 85
(Tex. Crim. App. 2003).  Because appellant withdrew his request for a writ of
attachment and because the trial court did not deny any request for such a
writ, we hold that appellant forfeited the complaint stated in his fourth
point, and we overrule that point.[9]

Conclusion

          Having
overruled all of appellant’s points, we affirm the trial court’s judgments.

 

 

PER CURIAM

 

 

PANEL: 
LIVINGSTON,
C.J.; MCCOY and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 21,
2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 22.021(a)(1)(B)(i), (2)(B), (e) (West Supp. 2012), § 33.021(c),
(f) (West 2011).





[3]In October 2012, appellant
sent this court a letter in which he expressed his belief that he had no chance
to succeed in these appeals and seemed to state his desire to dismiss them. 
The letter, however, did not comply with the requirements for a motion to
dismiss a criminal appeal.  See Tex. R. App. P. 42.2(a).  Thus, assuming
that appellant intended for his letter to serve as a motion to dismiss, we deny
the motion.





[4]To protect the identity of
the people associated with appellant’s acts described in this opinion, we will
refer to them through pseudonyms.





[5]See Mendez v. State,
138 S.W.3d 334, 345 (Tex. Crim. App. 2004) (“[W]hen trial by jury has been
waived, the defendant may change the plea from guilty to not guilty until the
court pronounces judgment or takes the case under advisement.”).





[6]Appellant was born in July
1986, so he was approximately twenty-three years old in 2009.





[7]At trial, Kyra opined that
something might have been put into the wine.





[8]A writ of attachment
commands “some peace officer to take the body of a witness and bring him before
[a] court, magistrate or grand jury on a day named, or forthwith, to testify in
behalf of the State or of the defendant, as the case may be.”  Tex. Code Crim.
Proc. Ann. art. 24.11 (West 2009).





[9]In his discussion of his
fourth point, appellant asserts that his federal and state constitutional
rights to compulsory process were violated because the trial court did not
compel Audrey to attend his trial.  Appellant likewise forfeited this argument
because he did not raise it in the trial court.  See Tex. R. App. P.
33.1(a)(1); Anderson v. State, 301 S.W.3d 276, 280 (Tex. Crim. App.
2009).